## UNION CENT. LIFE INS. CO. v. PHILLIPS.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1900.)

### No. 838.

1. APPEAL—PLEADINGS—AMENDMENTS.

All matters of amendments to pleadings, particularly trial amendments, are within the discretion of the trial court, and its action is not reviewable on a writ of error.

2. BILL IN EQUITY—RIGHT TO MAINTAIN.

A bill in equity cannot be sustained as ancillary to a suit at law, where neither the parties nor the subject-matter is the same, and where the complainant on the facts stated has a complete remedy at law.

3. SAME—RELIEF GRANTED.

Where a party having a right to resort to court of equity to compel the delivery of a life policy is properly in that court after loss has occurred, the court will give such final relief as the circumstances of the case demand.

4. INSURANCE—CONTRACT.

Plaintiff's intestate applied to defendant for a life policy, using defendant's blanks and answering the questions therein in full. Defendant's medical examiner recommended her for insurance, and on the following day plaintiff paid the premium to defendant's general agent, taking a receipt therefor, which provided that the applicant was insured from the date thereof, in accordance with the conditions of the policy, if the applicant should be accepted. The policy was issued, and forwarded to the agent, with a blank instructing him that all applications on lives of women should be submitted to the home office, with a copy of the blank, properly filled in. All material questions propounded to the agent in the blank were substantially answered by the applicant in her application, and he had already obtained sufficient information to enable him to make satisfactory answers. On receipt of the policy, he sent plaintiff this message: "Policy came O. K. I will be there shortly, and deliver it." Eight days later, and before the policy was delivered, the assured died; whereupon the agent returned the policy to the home office, and

thereafter defendant refused to deliver it, kept plaintiff in ignorance of its terms, and refused to pay the loss, though furnished with proofs of loss. *Held*, that there was a completed contract of insurance, which a court of equity would enforce.

5. SAME—VERBAL AGREEMENT.

A verbal understanding between the insurer's agent and one representing the assured in her negotiations for a life policy, to the effect that it should be payable to her sister instead of her legal representatives, as stated in the application and policy, cannot be used to alter or vary the policy, so as to affect the insurer's liability.

6. SAME—ACTION ON POLICY.

A condition indorsed on an undelivered life policy, payable to the legal representatives of the assured, provided that no suit should be brought thereon after one year from death. Owing to a misapprehension as to who the beneficiaries were, a suit at law on the policy was brought by a wrong party within the 12 months. The error was not discovered until a few days after the expiration of the 12 months, when a bill in equity was filed by the proper party plaintiff to compel delivery of the policy, which defendant had wrongfully refused to do, and to obtain a decree for the amount due thereon. *Held*, that plaintiff was not barred by the limitation indorsed on the policy.

7. APPEAL—REVERSAL.

Where the variance between the evidence and the bill filed in a United States district court is such that the latter requires amendment to support the decree, the circuit court of appeals will reverse it, and remand the case to the lower court for an amendment and further proceedings.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

Action by William T. Phillips, administrator of Willis Arlena Pugh, deceased, against the Union Central Life Insurance Company. From a decree for plaintiff, defendant appeals. Reversed.

Phillips, as guardian of Ella L. Pugh, minor, brought suit at law for $5,000 and damages and attorney's fees in the superior court of Bibb county, Ga., against the Union Central Life Insurance Company of Ohio, on a policy alleged to have been issued by that company on the life of Willis Arlena Pugh, an older sister, also a minor, for the benefit of, and payable to, the said Ella L. Pugh, the plaintiff; alleging that the policy had been executed and forwarded by the company to its manager, T. S. Lowry, Macon, Ga., about the 1st day of June, 1895, and that said Lowry thereupon became the agent of the assured for the delivery of said policy, and the said Lowry undertook and agreed as such to deliver, but had refused to deliver it; that the assured died on the 12th day of said month of June. Plaintiff also alleged demand for the policy and for payment, and due proof of claim and death, and that payment had been refused; giving notice to defendant to produce application and policy of insurance sued on, and praying for judgment. There was exhibited to the petition the receipt of Lowry, manager, to W. T. Phillips, of May 8, 1895, for $36.95, and for note for $100, being the first annual premium, and embodying agreement "that said Willis Arlena Pugh is to be insured from date of this receipt in accordance with the provisions, conditions, and stipulations of the policies of said company. If, however, the application shall be declined by the company, this agreement to be null and void, and the amount returned to said Phillips by me on surrender of receipt." Defendant removed the cause into said United States circuit court, and therein appeared and pleaded, denying all the allegations in plaintiff's petition except paragraphs 2, 12, and 16; among the paragraphs emphatically denied being paragraph 14, which expressly alleged that the application and policy were for the benefit of, and payable to, said Ella L. Pugh.

The case was called for trial on the 15th of December, 1896, a year and a half after the death of the assured, and defendant's attorneys handed a policy to plaintiff's attorneys in response to notices given in petition and otherwise,

accompanying the said policy with written and sworn response of John M. Patterson, president of defendant, showing the policy furnished to be the only one ever executed by defendant on life of the deceased. Plaintiff's attorneys, upon discovering the policy was not payable to Ella L. Pugh, but, in case of death of said Willis A. Pugh, to her executors, administrators, or assigns, moved to amend the suit at law by making it a suit in favor of Phillips as administrator of Willis A. Pugh, deceased, on a policy payable to such administrator, instead of a suit, as it then stood, in favor of Phillips as guardian of his minor ward, Ella L. Pugh, on a policy payable to her: the plaintiff incorporating in his motion allegations to the effect that defendant had refused to allow him to see the application or policy, and had concealed the terms, conditions, and provisions of the same, and that it then for the first time came to his knowledge that the same was payable to the legal representative of deceased. The court refused to allow the amendment, but by a separate order, on motion of plaintiff's counsel, ordered that plaintiff be allowed "thirty days in which to file a bill on the equity side of the court, and in default thereof said case stand dismissed."

On the 4th of January, 1897, Phillips, the same natural person, but as administrator of Willis A. Pugh, the deceased, and not as guardian of Ella L. Pugh, his minor ward in life, nor as plaintiff in the suit at law, filed a bill in the same court against the same defendant in aid of the common-law suit, under order of the judge at chambers, granted on that day, in which order the judge required the defendant to show cause why the common-law action should not be enjoined. Complainant alleged in his bill substantially what the plaintiff did in the common-law petition, expressly alleging in paragraph 8 that said Lowry, manager, after receiving said policy, held the same as agent of orator, and alleging, additionally, that said Lowry, as manager, on the 3d of June, 1895, after receiving said policy, "wrote and mailed to orator, at Delight, Twiggs county, Ga., a postal notifying your orator that said policy had been received by him 'O. K.,' and that he would shortly come down and deliver same," which postal was duly received at Delight post office on June 5, 1895, and that before he went to Twiggs county, and turned over said policy to orator or Willis Arlena, but while he still held the same as agent of Willis Arlena, to wit, on the 11th of June, 1895, the said Willis Arlena died. The complainant also charged fraud on the part of defendant, its agents and attorneys, in failing and refusing to deliver and exhibit the policy or copy thereof, and in repossessing itself of the same, and that orator was illiterate, and could not read, and believed the application was made by Willis Arlena for a policy to be payable to her sister Ella Louise Pugh, minor ward of orator, and that said policy had been so issued, and did not discover otherwise until said policy and application were produced under notice in court in the common-law suit on the 15th of December, 1896; that he had, under such impression that the policy was payable to said Ella Louise, made proof of death, and demand of payment, and brought the said suit as her guardian, in Bibb superior court, to recover the amount due on said policy. Complainant also charged that defendant refused to allow his counsel to inspect said policy, or give a copy thereof, to prevent proper suit being brought within one year after death, and thus invoke the one-year clause to defeat said suit. He prayed injunction against common-law suit, delivery of policy, recovery of the money, and for damages, and for attorney's fees, and for general relief.

Defendant demurred to the bill as follows: "(1) No jurisdiction; (2) no equity; (3) not maintainable in aid of the cause therein referred to, or as ancillary thereto, or as supplemental thereto; (4) not maintainable as an original bill, or as a bill in the nature of an original bill, or bill not original; (5) because under averments and exhibits not maintainable in cause or court in aid of suit, complainant not being party to suit, and the cause of action in bill not being same cause of action in suit, and right of recovery in bill not being same right of recovery in suit; (6) because complainant (as administrator of deceased) had never made proof of death, proof of claim, or demand for payment; (7) because it appeared from the terms of the contract sued on and exhibited that the time within which suit could be brought and maintained thereon, either in law or in equity, had expired before the filing of the bill; (8) because complainant not entitled to any relief prayed."

Defendant filed an answer for cause, as required by the order of the judge, denying all the material allegations of the bill, including the averments of fraud, and pleading the one-year clause, and complainant and defendant supported bill and answer by affidavits.

The court heard the demurrer and rule to show cause at the same time, and on the 29th of April, 1897, overruled the demurrer, and refused the injunction; the defendant filing, and having the court to note, exceptions to the order overruling said demurrer.

The respondent duly filed its answer June 5, 1897, denying all the material allegations in the bill, including those of fraud; and also, in denying the delivery of the policy, alleged that the same was "forwarded to said Lowry upon condition that he would visit the said Willis Arlena Pugh at her residence, and after enabling himself to do so, by acquiring all necessary and proper information, answer in writing certain questions hereafter given in the opinion; that in forwarding said policy to the said Lowry the same was accompanied with this form, and the said Lowry was instructed and required before delivering it to visit the residence of the said Willis Arlena, and to fully answer in writing the said questions; that the said Lowry had no instructions or authority to otherwise deliver the same, and he never made said visit or answered said questions, and was never in a position to act for respondent in delivering said policy; that he received the same as agent of this respondent; that he so held the same as agent of this respondent until as such agent he returned the same to this respondent; that no contract of insurance ever existed between respondent and the said Willis Arlena, except the conditional contract set forth in said receipt; that respondent never approved said application, and never delivered said policy, and never authorized it to be delivered, except upon the conditions stated; that at the time said Lowry wrote the postal card he assumed that there would be no difficulty in his making the necessary written statement, as required of him by the company, upon his visit to the residence of the said Willis Arlena, and fully expected when he made said visit to complete the said examination and answer said questions in writing as required, and then to deliver the said policy; that before he made said visit or statement the said Willis Arlena died, leaving the said contract of insurance incomplete, and not binding upon respondent." Respondent further alleges that until the motion to amend the common-law suit was made it never knew or had any notice that said Phillips was guardian or ex officio administrator of said Willis Arlena, or that there was any guardian of the said Willis Arlena, or any administrator of her estate. This respondent, having completed no contract of insurance with the said deceased, owed her administrator or heirs or creditors no duty in relation to any policy, and did not feel called upon to ascertain whether her estate was represented, or whether, if so, her administrator had any claim upon this respondent, and this respondent did not see proper to invite suit from any quarter upon a claim that did not legally or morally exist, and, unless such course was a fraud, respondent has been guilty of no fraud whatever; that all proceedings, correspondence, claims, and demands upon the part of Phillips and his attorneys had been by him and them in right of said Phillips as guardian of the said Ella Louise Pugh. Respondent also alleges in said answer that the failure of complainant to bring suit as administrator of deceased within one year from the death of the said Willis was no fault of respondent; that said bill was filed long after the said period had elapsed, and that the act of the said complainant in trying to connect the same with the suit at law was a mere device on his part to avoid the one-year stipulation in said policy; that, if said policy ever became binding upon respondent, the same limitation became binding on the deceased, and was in full force and effect, and said administrator on this account had no right of action against respondent. Respondent alleged tender of money and interest paid on premium, and also the note, and also alleged continuous tender of both, averring deposit of the same with the clerk.

On the hearing the following decree was rendered:

"This cause coming on to be heard at the present term, to wit, on the 3d day of January, 1899, on the bill and answer and proofs in the case, and was argued by counsel; and it appearing to the court that the plaintiff's intestate made a proposal in writing for insurance, which contains all the necessary

terms of a valid contract for a policy, and that the defendants accepted this proposal; that this acceptance made a legal contract between the parties which it was the duty of the court to order to be specifically performed; that as equity does complete justice, and if said policy had been delivered in pursuance of the contract the plaintiff would then have had a complete cause of action on the common-law side of the court, and would have been entitled to recover the amount of said policy, and as equity would decree to be done that which ought to have been done: Thereupon it is ordered, adjudged, and decreed that the said agreement entered into between the plaintiff's intestate and the defendant, set forth in the bill of complaint and proofs in this case, be specifically performed. It is further ordered, adjudged, and decreed that the plaintiff recover of the defendant the sum of four thousand and nine hundred dollars as and for the principal debt and her damage in this behalf sustained, a deduction having been made for the agreed amount of said policy of one hundred dollars, the unpaid premium; that in addition to said principal sum, that the plaintiff also recover the further sum of eleven hundred and sixty-two $38/100$ dollars, the same being the interest upon said unpaid principal at the rate of seven per cent. per annum, the same being the legal rate of interest from the 13th day of October, 1895, to the present date; and the further sum of ——— dollars for his costs in this behalf sustained.

"Open Court, March 6, 1899. Emory Speer, Judge."

With the decree Judge Speer filed a written opinion, which is found in the transcript, and is reported in 101 Fed. 33.

Du Pont Guerry and Robert Ramsey, for appellant.

Washington Dessau, Isaac Hardeman, C. A. Turner, B. M. Davis, and N. E. Harris, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge, after stating the facts, delivered the opinion of the court.

The ruling of the circuit court in the action at law refusing the amendments offered has been much discussed, but, as the ruling was not brought before us by a writ of error, we are very clear that the ruling complained of is not subject to review, and we only remark that the power of the court with regard to amendments in an action at law is very broad, under section 5106, Code Ga., and section 954, Rev. St. U. S., and that it is generally settled that all matters of amendments to the pleadings, particularly including trial amendments, are within the discretion of the trial court, and its action allowing or refusing amendments is not reviewable on writ of error. The bill in this case cannot be sustained as ancillary to the suit at law, because the parties are not the same, the subject-matter is not the same, and as to all the matters stated in the bill the plaintiff has an adequate remedy at law. As an original bill it is demurrable for want of equity, the complainant on the facts stated having a complete and adequate remedy at law. If the contract of insurance was complete, and the policy made out and delivered, though afterwards withdrawn and retained by the insurance company, it could have been pleaded and proven without difficulty or obstruction in an action at law. "A court of equity has no jurisdiction of a suit on a bond which, it is alleged, was, through the fraud of a person not a party to the suit, delivered up to be canceled, but which it was claimed was still in force, where no discovery was sought, and where the bill furnished a substantial copy of the bond. * * * The bill cannot be sustained on the ground of discovery, for discovery

is expressly waived, nor on the ground of account, for the complainant states with precision the amount he claims, and, if anything is to be added by way of interest or expenses, that can be ascertained as well in a court of law as of equity. Does the fact that the bond is not in the possession of complainant, but that its possession has been obtained by the fraud of one of the obligors, give a court of equity jurisdiction? It does not, if, notwithstanding these facts, there still remains to complainant a plain, adequate, and complete remedy at law. These circumstances do not, either in stating the case by pleading or in proving it by evidence, in a court at law, present any obstacle to a complete and adequate remedy. When a party pleads a deed or claim, or justifies under it, he must, as a general rule, make profert of it. But there are exceptions to this rule, among which is the case where the deed is lost or destroyed, or is in the possession of the opposite party. These circumstances dispense with the necessity of profert. Steph. Pl. 439–441. In proving the averments of the declaration, when the instrument sued on was lost or in possession of opposite party, there would be no obstacle in a court of law. Even where a written instrument which is required in evidence is in the possession of a third person, yet, if there is a privity between such person and the party, a notice to the party is sufficient to let in evidence of its contents. And in case the other party refuses to produce an original deed or agreement which is in his possession, and which he has had notice to produce, secondary evidence of the contents will be received without proof of the execution of the original. 1 Phil. Ev. 440, 452. This is substantially the rule enacted by the Code of Georgia, without regard to the means by which the paper got into the possession of the opposite party. See Code, §§ 3508–3510. * * * The rule to govern such cases is laid down with great precision and clearness by Mr. Justice Campbell in the case of Hipp v. Babin, 19 How. 271, 15 L. Ed. 633. The result of the argument is that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment, which affords a plain, adequate, and complete remedy without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." Insurance Co. v. Guerard, 3 Woods, 427, 430, 432, Fed. Cas. No. 5,461.

As the case is presented here, however, it clearly appears that while the preliminary contract for insurance was entered into, and the first premium paid, the policy was not delivered; thus presenting a case where the complainant may invoke the aid of a court of equity to compel a specific performance of the contract. "It has been objected that the plaintiff had an adequate remedy at law, and was not, therefore, under the necessity of resorting to a court of equity; which may very well be admitted. But it by no means follows from this that a court of chancery will not entertain jurisdiction. Had the suit been instituted before the loss occurred, the appropriate, if not the only, remedy would have been in that court to enforce a specific performance, and compel the company to issue the policy. And this remedy is as appropriate after as before the loss, if not as essential, in order to facilitate the proceedings at law. No doubt a count could have been framed upon the agreement to insure so as to have maintained the action at

law. But the present proceeding would have been more complicated and embarrassing than upon the policy. The party, therefore, had a right to resort to a court of equity to compel the delivery of the policy, either before or after the happening of the loss; and, being properly in that court after the loss happened, it is, according to the established course of proceeding, in order to avoid delay and expense to the parties, to proceed and give such final relief as the circumstances of the case demand. Such relief was given in the case of Motteux v. Assurance Co., 1 Atk. 545, and in Perkins v. Insurance Co., 4 Cow. 646. See, also, Bell v. Holford, 1 Duer, 66; Shelton v. Westervelt, Id. 110; Cooke v. Cooke, 2 Phil. 583." Tayloe v. Insurance Co., 9 How. 390, 404, 13 L. Ed. 187.

The case shows that on March 30, 1895, Miss Willis Arlena Pugh made application to the Union Central Life Insurance Company for insurance on her own life, using therefor the blanks of the company, and answering in full all questions therein propounded. The eighth answer is as follows: "Amount of policy, $5,000; kind of policy, 20 paymt. option; premium, how payable, A." On the 7th of May following she was examined by a medical examiner of the company, and was by him recommended on that day for insurance in the company. On the 8th of May following her grandfather and guardian, the present complainant, paid a part of the premium to the company's general agent and department manager, taking receipt therefor, and giving a note for the balance due. The receipt given is as follows:

"Union Central Life Insurance Company, Cincinnati, Ohio.

"Macon, Ga., May 8, 1895.

"Premium, $136.95.
"Insurance, $5,000.

"Received of W. T. Phillips, thirty-six $95/100$ and note for one hundred dollars, being first annual premium on the application for a policy of insurance in the Union Central Life Insurance Company of Cincinnati, Ohio, for 5,000 dollars on the life of Willis Ilena Pugh. It is hereby understood and agreed that the said Willis Ilena Pugh is to be insured from the date of this receipt, in accordance with all the provisions, conditions, and stipulations of the policies of said company, provided said application shall be approved and accepted by said company. If, however, the application shall be declined by the company, this agreement to be null and void, and the amount (receipt whereof is herein acknowledged) is to be returned to said W. T. Phillips by me on surrender of this receipt. T. S. Lowry, Mgr."

In accordance with the application, a written policy was prepared by the insurance company, and forwarded to the general manager, accompanied by a blank as follows:

"The Union Central Life Insurance Company—Agent's Statement—Woman's Life.

"Submitted with Application on Life of Willis A. Pugh. Residence: Delight, Ga. No. 130,501. T. S. Lowry, Agt.

"Note. All applications on the lives of women must be submitted to the home office, with a copy of this form properly filled in.

"See rules with regard to applications of women in rate book.

"(1) Have you personally seen the applicant at her own residence?

"(2) Are you personally acquainted with her? If so, how long have you known her?

"(3) Why is she applying for life insurance? Was it suggested to her by you? If not, how was the insurance brought about?

"(4) If married, is her husband insured in this company, and, if so, for what amount? If he is not insured, why not?

"(5) Does the applicant reside with her parents or other member of her family?

"(6) State applicant's occupation in full.

"(7) If applicant is a widow, state number of children living, if any, and age of each."

"(9) If beneficiary is other than child, for what purpose is the insurance applied for?

"(10) What is the age of the beneficiary proposed, and is he dependent on the applicant for support? Give full particulars.

"(11) Is the applicant directly or indirectly engaged or in any way connected with the manufacture or sale of intoxicating liquors?

"(12) Does she now reside in a house where such trade is carried on?

"(13) Does the applicant propose to pay the premiums on the policy applied for out of her own means? If not, by whom are the premiums to be paid?

"[Signed]                                     ————, Agent.

"Approved, ————, General Agent.

"Date, ————, 18—."

The general manager testifies that he also received a letter with the policy, directing him to deliver the policy only after he had followed the instructions of the company. This letter is lost. It gave him instructions to deliver the policy only after he had obtained satisfactory information that would enable him to answer the questions satisfactorily. Further, he testifies as follows:

"Q. I will get you to state whether you had in this particular instance any express authority to deliver this policy. A. No, sir; I had express authority not to deliver it,—instructions not to deliver it until I had seen the applicant at her home, and was enabled to answer the questions satisfactorily."

The material questions propounded to the manager in the blank aforesaid are all substantially answered by the applicant in her application. The information sufficient to enable the manager to make satisfactory answers had apparently been already obtained by him, for on June 3d, 25 days after the payment of the premium, he sent to Phillips, Miss Pugh's guardian, a postal card with this message: "Policy came O. K. I will be down there shortly, and deliver it. Yours, sincerely, T. S. Lowry, Department Manager, Macon, Ga." Before the manager made the proposed visit, and before the policy was delivered to the assured, or any one for her, Miss Pugh died, on the 11th of June, 1895; whereupon the manager returned the policy to the home office of the company. Thereafter the company neglected and refused to deliver the policy, concealed, or at least for over one year kept the complainant in ignorance of the terms of, the same, and, although furnished with proofs of death of the assured, refused to pay the loss. These facts and circumstances present a case of equitable cognizance, and we are of opinion, under the evidence in the record, a case for equitable relief.

The appellant contends that there was no contract,—no meeting of minds,—and, if there was a contract, the condition indorsed on the undelivered policy, and, in substance, generally found in life insurance policies, to wit, "No suit to recover under this policy shall be brought after one year from the death of the insured," bars a suit in equity as well as an action at law.

In regard to these questions we concur with the learned judge in the court below, who found and held as follows:

"Now, it appears in the testimony that the grandfather of Willis A. Pugh, who had represented her in the negotiations with the defendant company, wished that the policy should be made payable, not to the heirs and administrators of the applicant, but to her younger sister, and he was of the opinion that it was issued in that form until it was produced in court. It now turns out that it was made payable to her legal representatives. This was a variance between the terms of insurance as proposed by Mr. Phillips and as they were expressed in the policy, and it is insisted, therefore, that the minds of the insured and insurer never met upon this contract of insurance, and it is therefore no contract. While it may be true that Willis A. Pugh might have had the terms of the policy corrected in accordance with her wishes if she had lived, yet, having died, it is, in my opinion, not competent for the insurance company to take advantage of its own mistake. The contract was to insure her life, and that contract was of force, and a court of equity, under the circumstances, will enforce it. It is, moreover, true that the written application which Willis A. Pugh signed requested the policy to be made out as it was drawn, and the verbal understandings with her grandfather and the agent of the insurance company anterior to this written application, and the policy drawn pursuant thereto, cannot alter or vary it so as to avoid the liability of the defendant company. * * * Nor will the defense of the statute of limitation avail the defendant company. Under a misapprehension as to the beneficiary of the policy, suit was brought thereon within the 12-months period by the guardian of the younger sister. The suit was erroneously brought, for the terms of the application and the policy place the title to its proceeds in the legal representatives of the deceased. A few days after the expiration of the 12 months this bill was filed by the proper party plaintiff to compel the defendant company to deliver the policy, which it had refused to do, and also sought a decree for the amount due thereon. This being true, I think it would be unconscionable to allow the company to take advantage of its own mistake. It was, as we have seen, a completed contract, and, although death had intervened before the actual delivery of the policy, it was the plain duty of the company to deliver the policy to the legal representative of Miss Pugh. Instead of doing this, it took the policy out of the state. Thus deprived of the opportunity to correct their mistake by an inspection of the policy, the legal representative of Miss Pugh technically fell under the bar of the statute, but a court of equity, under the circumstances, will not hold him barred. The company is estopped from pleading the statute."

In Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590, it was decided that:

"In the absence of obligatory rules of court to the contrary, a court of equity, after a cause has been heard and a case for relief made out, but not the case disclosed by the bill, has power to allow an amendment of the pleadings on terms that the party not in fault has no reasonable ground to object to. And this amendment will be allowed on a bill for specific performance where the subject-matter and general purpose of both bills is the same, and the contract, consideration, promise, and acts of part performance, stated in the amended bill, are stated with sufficient precision, and are supported by proofs, taken under the original bill, which entitle the complainants to the relief which they seek." "When the facts of the case show the plaintiff to have an equitable title to relief, this court, while it may be unable to afford such relief upon the case made by the bill, has in several instances asserted its power to remand the case to the court below for an amendment of the pleadings and such further proceedings as may be consonant with justice. In Crockett v. Lee, 7 Wheat. 522, 5 L. Ed. 513, plaintiff filed a bill to obtain a conveyance of land covered by a certificate of settlement right, the legal title to which was in the defendant, and he was decreed by the court below, in conformity with another bill filed by the defendant, to convey to the defendant the land covered by his patent. It was contended in the supreme court that the defendant ought not to be allowed to recover on his cross bill by reason of his failure to make the proper averments with respect

to the invalidity of the plaintiff's title. The court adopted the view of the appellant in this particular, but remanded the case, with directions to permit the parties to amend their pleadings. In Watts v. Waddle, 6 Pet. 389, 8 L. Ed. 437, this court affirmed the decree of the circuit court refusing the specific execution of a contract; but, after reviewing the evidence in detail, it further ordered that, to give relief for the rents and profits of the land in controversy, the decree of the circuit court dismissing the bill should be opened, and the case remanded for further proceedings in conformity with law and justice. In delivering the opinion of the court, Mr. Justice McLean observed that 'a new ground of relief has been assumed in the argument here that was not made in the circuit court, which is that, although this court should be of the opinion that a specific execution of the contract ought not to be decreed, still the complainants are entitled to a decree for the rents and profits of the land while it was in the possession of the defendants. * * * There is no rule of court or principle of law which prevents the complainants from assuming a ground in this court which was not suggested in the court below, but such a course may be productive of much inconvenience and of some expense.' So, in Parkhurst v. Van Cortlandt, 1 Johns. Ch. 273, where possession had been taken of land, and improvements made, under an imperfect agreement for purchase, though the court would not grant relief upon the ground of part performance, yet the bill was maintained for the purpose of affording the party reasonable compensation for beneficial and lasting improvements. * * * Rules of pleading are made for the attainment of substantial justice, and are to be construed so as to harmonize with it if possible. A mistaken view of one's rights or remedies should not be permitted wholly to defeat a claim founded upon principles of equity and justice, and if the pleadings can be so amended as to admit proof of such claim, and such amendment does not introduce a new cause of action, though it may set up a new measure of damages, or work a real hardship to the party defendant, it is within the discretion even of the appellate court to permit such amendment to be made. The Anne v. U. S., 7 Cranch, 570, 3 L. Ed. 442." Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 396, 413, 415, 12 Sup. Ct. 188, 35 L. Ed. 1055.

In the present instance the variance between the case made by the evidence and that by the bill is such that the latter requires amendment to support the decree, and, under the controlling authorities cited, we deem it our duty to take such action as will permit such amendments as the equity rules warrant and as counsel may advise, upon such terms as may be just. The decree of the circuit court is reversed, and the cause is remanded, with instructions to therein proceed in accordance with the views herein expressed, and otherwise as equity requires.