## EAGLE STAR & BRITISH DOMINIONS INS. CO., Limited, et al. v. GEORGE A. MOORE & CO.

(Circuit Court of Appeals, Ninth Circuit. December 18, 1925.)

No. 4621.

1. **Insurance ⬅262—Knowledge of loss before issuance of policy and failure to notify insurer will preclude recovery on policy.**

Insured's actual knowledge of loss before issuance of policy and failure to communicate that fact to insured will preclude recovery, if dependent solely on policy.

2. **Insurance ⬅262—Failure to notify insurer that loss had already occurred when policies were issued held not to preclude recovery.**

Where valid contracts of insurance were entered into before loss, to be followed by formal written policies, failure of insured to notify insurer that loss had already occurred at time of issuance of policies *held* not to preclude recovery.

3. **Specific performance ⬅78—Equity will specifically enforce a contract to insure or deliver policy of insurance.**

Equity will specifically enforce a contract to insure or deliver policy of insurance.

4. **Insurance ⬅608—Action held properly brought on policies issued after loss, rather than antecedent contracts.**

Where loss occurred before execution of formal written policies, though after valid contracts of insurance had been made, *held*, action was properly brought on policies, rather than antecedent contracts.

5. **Insurance ⬅273—There is an implied warranty of seaworthiness at inception of voyage, as necessary incident to every contract of marine insurance.**

There is an implied warranty of seaworthiness at inception of voyage, as necessary incident to every contract of marine insurance.

**6. Insurance** ⬅273—**Insurance policies held not to contain implied warranty of seaworthiness.**

Insurance policy covering "loss or damage to any goods, merchandise, freight, or other things or interest whatsoever, other than as aforesaid, whether on board said steamship or not, which may arise from any cause whatever, but no liability to attach to underwriters for shortage of cargo," *held* not to include an implied warranty of seaworthiness of vessel.

**7. Insurance** ⬅471—**Loss of benzine from rusting of containers held not "shortage of cargo," within exemption from loss in insurance policy.**

Where cases containing benzine, stored in deckhouse, rusted and were destroyed by sea water, permitting benzine to escape, the loss was not a "shortage of cargo," within exemption from liability in insurance policy.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Suit in admiralty by George A. Moore & Co. against the Eagle Star & British Dominions Insurance Company, Limited, and others. Decree for libelant, and respondents appeal. Affirmed.

For opinion below see 5 F.(2d) 358.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for appellants.

S. Hasket Derby and Carroll Single, both of San Francisco, Cal., for appellee.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a decree in admiralty awarding damages to the appellee under certain protection and indemnity insurance policies issued by the appellants to the owner of the sailing vessel C. S. Holmes, and assigned to the appellee as chartered operator. The several policies cover "loss or damage to any goods, merchandise, freight, or other things or interests whatsoever, other than as aforesaid, whether on board said steamship or not, which may arise from any cause whatever, but no liability to attach to underwriters for shortage of cargo," during the space of 12 calendar months beginning at noon May 15, 1920, and ending at noon May 15, 1921. The amount of the loss was fixed by a decree of the Supreme Court of New Zealand, sitting in admiralty. A more complete statement of the case is not deemed necessary to a proper understanding of the questions presented for decision, except to state the facts upon which each contention is made, as we proceed.

Briefly stated, the several contentions are: First, that the policies were issued after the appellee had notice of the loss, and that a failure to communicate that fact to the appellants avoided the policies; second, that the judgment of the New Zealand court rests upon a necessary finding that the loss occurred through unseaworthiness of the vessel, by the fault and with the privity of this appellee; third, that the policies contain an implied warranty that the vessel was seaworthy at the commencement of the voyage, that a breach of that warranty is conclusively established by the judgment of the New Zealand court, and that such breach precludes a recovery, regardless of actual fault or privity on the part of the appellee; fourth, that the claim upon which the liability in suit arose was for shortage of cargo, and no liability attaches to the underwriters for such shortage, under an express exception contained in the several policies.

[1] The facts upon which the first contention is based are as follows: The vessel sailed from San Francisco about May 1, 1920, and made fast at New Plymouth wharf, New Zealand, July 7, 1920. The loss occurred prior to the latter date, although the full extent of the loss was, perhaps, not known until a few days later. The first policy, in point of time, was issued July 17, 1920; the second, July 21, 1920; and the third, July 27, 1920. If the rights of the appellee rested upon the written policies alone, there could be no recovery, under well-settled principles of law, as to one of the policies at least, because as to that the appellee had actual notice of the loss before the policy was issued, and failed to communicate that fact to the insurer, and perhaps notice of the loss as to the other two policies would likewise be imputed. Gladstone v. King, 105 Eng. Reprint, 13. But the court below found that the insurance was effected as to all three policies in May, 1920 before the loss, and by agreement of counsel that finding is not open to question on this appeal.

[2] We are confronted, then, with this situation: Valid contracts of insurance were entered into before the loss, and these were followed by formal written policies after the loss. For the purposes of this case we may assume that, at the time of the issuance of the latter, the appellee had notice of the loss and failed to communicate that fact to the insurers. By reason of this failure the appellants contend that there can be no recovery on the written polices issued after the loss because of implied fraud, and no recovery on the antecedent contracts because they became merged in the written policies. This would

be a harsh rule, to say the least. Numerous cases have been cited tending to sustain it, but in many of them it does not appear that there was a valid antecedent contract of insurance, and in nearly all of them there was evidence of actual fraud or a controversy over the terms of the antecedent contract. We will concede that, where there is a controversy over the fact of insurance or the terms of insurance, there would be strong reasons for holding that the insurers should be free to litigate these questions, untrammeled by written policies procured after the loss, without bringing the fact of loss home to them. But where, as in this case, there is no controversy over the fact of insurance, or the terms of insurance, and where the policies were issued after the loss, as a matter of course, in the regular and ordinary course of business, without fraud or misrepresentation of any kind, all reason for the rule ceases, and the rule itself should have no application. See El Dia Ins. Co. v. Sinclair, 228 F. 833, 143 C. C. A. 231; Mead v. Davison, 111 Eng. Reprint, 428; Keim v. Home Mut. Fire & Mar. Ins. Co., 42 Mo. 38, 97 Am. Dec. 291; 1 Joyce on Insurance (2d Ed.) § 108; 38 C. J. 1016. In the El Dia Ins. Co. Case certiorari was denied by the Supreme Court, 241 U. S. 661, 36 S. Ct. 449, 60 L. Ed. 1226.

[3] The only purpose of a preliminary contract of insurance is to protect the insured until a formal policy can issue, and the practice of entering into such preliminary contracts is a common one. Why, then, should the insured be chargeable with fraud when the policy is later issued, pursuant to the express understanding and agreement of the parties, even though a loss has accrued in the meantime. It is well settled that a court of equity will specifically enforce a contract to insure, or to deliver a policy of insurance; and, if so, how can it be consistently claimed that a contract which a court of equity would compel the insurer to execute or deliver is fraudulent and void, if executed freely and voluntarily, without constraint or coercion. Union Central Life Ins. Co. v. Phillips, 102 F. 19, 41 C. C. A. 263. For these reasons, we are of opinion that the mere fact that the policies were not issued until after the loss constituted no defense to the action, under the circumstances disclosed by the record.

[4] It is further contended that the action should have been brought upon the antecedent contracts and not upon the policies. With this contention we are unable to agree. The action was properly brought on the policies, and, when the defense of invalidity was interposed, it was competent for the appellee to rebut that defense by proving the antecedent contracts. Such was the course pursued here.

[5, 6] It will be conceded, of course, that there is an implied warranty of seaworthiness at the inception of the voyage as a necessary incident to every contract of marine insurance, and, if that rule is applicable here, it becomes necessary to consider the question of seaworthiness. In our opinion, however, the policies in suit are subject to no such limitation or exception. As the name imports, they are general contracts of indemnity covering loss or damage to any goods, merchandise, freight, or other things or interests whatsoever, whether on board or not on board, which may arise from any cause whatever, excepting only liability for shortage of cargo. It seems to us that more comprehensive language could not well have been used, and that no warranty of seaworthiness can be implied. Such is the construction given similar contracts by the courts of the country in which the contracts in suit were made, and that construction meets with our approval, if, indeed, it should not be accepted as controlling. Joyce v. Kennard, 7 Q. B. L. R. 78; Cunard Steamship Co. v. Marten, [1902] 2 K. B. L. R. 624.

[7] The loss was this: A quantity of benzine was stored in the deckhouse, and the cases containing the benzine were rusted and destroyed by sea water, permitting the benzine to escape. The cargo was confessedly placed on board the vessel, and the mere fact that it was lost or destroyed during the voyage, through the negligence of the shipowner, does not bring the case within the exception as to shortage of cargo.

The decree is affirmed.