SILVERSTEIN et al. v. MICHAU et al.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 142.

1. CUSTOMS AND USAGES ⬦12—APPLICATION AND OPERATION—KNOWLEDGE OF PARTIES.

That a purchaser of a specified number of pieces of black voile, described as "50 mets. (meters)," did not know of a well-known and long-established custom in the trade to refer to one-half of a piece varying from 100 to 110 meters in length as it came from the loom as a 50-meter piece, it being practically impossible to make the material so that it would measure exactly 50 meters, did not affect the application of such custom, since where a general custom exists in a particular trade, it is presumed that all those engaged in that trade are familiar with its existence and requirements, and make their agreements in the light of such custom.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 23, 24; Dec. Dig. ⬦12.]

2. APPEAL AND ERROR ⬦999—REVIEW—QUESTIONS OF FACT.

A verdict was conclusive on a question of fact fairly submitted to the jury as to the existence of a well-recognized, long-continued, and uniform custom in a particular trade.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. ⬦999.]

In Error to the District Court of the United States for the Southern District of New York.

On writ of error to review a judgment of the District Court for the Southern District of New York for $6,138.03 entered upon the verdict of a jury in favor of the plaintiffs. The parties will be alluded to as they appeared in the District Court, viz., as plaintiffs and defendants.

Morrison & Schiff, of New York City (Jacob R. Schiff, of New York City, of counsel), for plaintiffs in error.

Rounds, Schurman & Dwight, of New York City (George W. Schurman and Harley L. Stowell, both of New York City, of counsel), for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1] The action was brought to recover for goods sold by the plaintiffs to the defendants pursuant to two written agreements dated July 1, 1910, and September 7, 1910, by the terms of which the defendants agreed to purchase "100 Pcs. 50 mets Black Voile 54 ins. 30,795 @ 91½c mark 112," and also "300 Pcs. 70 mets Black Voile 54 ins. 39,795 @ 91½ mark 112" by the first contract, and "500 Pcs. 50 mets Black Voile 49/50 ins. 47,510 @ 78½c mark 147" by the second contract. Translating the language of trade used by the parties into ordinary English, the first order above quoted is as follows: "100 pieces, 50 meters, Black Voile 54 inches wide, factory No. 39,795, at 91½ cents per yard, stock No. 112." The others, mutatis mutandis, are to the same effect. The dispute arises over the word "meters." Standing alone, the word would convey no definite mean-

ing to a person unaccustomed to the nomenclature of the trade. An average jury, seeing the words "fifty meters" in a contract for the sale of dress goods, would hardly know how to interpret them without assistance from those having an expert and technical knowledge of the business to which they relate. The defendants insist that when the aggregate yardage of the two contracts had been received and paid for, they were under no obligation to accept any more goods. In other words, they assert that the contracts called for 51,000 meters of voile, and that when they had received and paid for that amount, or approximately that amount, their liability under the contracts ended.

To meet this contention the plaintiffs introduced testimony to the effect that there was a well-known and long-established custom in the trade that a 50-meter piece of voile does not mean that the material is exactly 50 meters, or 54.68 yards in length. The custom grew out of the fact that when the voile comes off the loom it is in a piece varying from 100 to 110 meters in length. After it is dyed it is cut in two and each half is sold as a 50-meter piece. The same is true of the 70-meter pieces. It is practically impossible to make the material so that it measures exactly 50 meters or 70 meters to the piece.

The evidence of custom was not contradicted by the defendants and the fact that they did not know of its existence is not material. Where a general custom exists in a particular trade, it is presumed that all those engaged in that trade are familiar with its existence and requirements and make their agreements in the light of such custom.

[2] The entire controversy turns upon the question whether or not there was a well-recognized, long-continued and uniform custom in the trade such as the plaintiffs assert. This was a question of fact which was fairly submitted to the jury and their verdict, in our opinion, is conclusive of the controversy.

The judgment is affirmed with costs.