## WESTERN PETROLEUM CO. v. TIDAL GASOLINE CO.

(Circuit Court of Appeals, Seventh Circuit. July 20, 1922. Rehearing Denied September 7, 1922.)

No. 3058.

1. **Contracts ⬯152—Words given ordinary meaning.**

In the interpretation of a contract, the test is what the ordinary user of the language would understand the words under the circumstances to mean.

2. **Customs and usages ⬯15(1)—Words may be shown to have a special trade meaning.**

In construing a contract, the standard of ordinary usage is prima facie the one to be applied; but it is competent to show that in point of fact, in the particular trade to which the contract has reference, the words to be construed have a peculiar and special trade meaning, and the parties, being members of that trade, must have understood the words in that special sense.

3. **Appeal and error ⬯901—Plaintiff in error has burden of showing error.**

The burden of showing error is on the plaintiff in error.

4. **Customs and usages ⬯3—Requisites of a usage.**

A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract.

5. **Customs and usages ⬯19(1)—Usage a question of fact, to be proved.**

The existence of a usage relied on to change the plain import of language is a matter of fact, to be proved as any other matter of fact.

6. **Evidence ⬯471(18)—Witness experienced in a trade may state whether or not a trade usage existed.**

Where a trade usage is relied on to change the plain import of language, it is competent for a witness experienced in the trade to state whether or not the usage existed, since, if he does not testify as to its effect, he is merely stating a fact, and not a conclusion.

7. **Customs and usages ⬯13, 20—Persons engaged in a trade presumed to have contracted with reference to a trade usage.**

Where a trade usage relied on to change the plain import of language of a contract has been established, those engaged in the trade will be presumed to have contracted with reference to it, and actual knowledge thereof need not be proved.

8. **Customs and usages ⬯15(2)—Evidence as to practice of oil company admissible to prove meaning of contract of sale.**

In an action on a contract for the sale of gasoline, providing that "the price per wine gallon of said gasoline shall be three and one-half (3½) cents in buyer's cars, under the Standard Oil Company's tank wagon price, f. o. b. point of delivery, * * * Chicago market," involving an issue as to whether the phrase "tank wagon price" referred to the so-called "announced price," or to the price at which gasoline was actually sold from tank wagons in Chicago, it was competent to show the practice of the Standard Oil Company in informing the trade of its "announced price," and that during the period in dispute it did not give any notice of change in the tank wagon price.

9. **Customs and usages ⬯21—Existence of trade usage as to tank wagon price of oil held for jury.**

In action on contract for sale of gasoline, providing that "the price per wine gallon of said gasoline shall be three and one-half (3½) cents in buyer's cars, under the Standard Oil Company's tank wagon price, f. o. b. point of delivery, * * * Chicago market," in which there was evidence that, in addition to the differential price at which gasoline was actually sold from tank wagons in Chicago, there existed another dis-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tinct price, which was announced to the trade in general, and that it was on this so-called "announced price" that contracts in the oil trade were based, and that the phrase "tank wagon price" within the contract referred to this "announced price," rather than to the price at which oil was actually sold from tank wagons in Chicago, the question as to the existence of such usage *held* for the jury.

10. **Trial ☞110—Persistence of counsel in pressing questions to which objections were sutained held not ground for reversal.**

Persistence of counsel in pressing questions, to which objections were made and sustained, *held* not to constitute ground for reversal as against contention that counsel in such manner placed before the jury evidence which the court excluded, where counsel was endeavoring to preserve his record, believing such evidence to be competent.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Tidal Gasoline Company against the Western Petroleum Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Henry Russell Platt, of Chicago, Ill., for plaintiff in error.

Edward W. Everett, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This writ of error is prosecuted to review a judgment in favor of plaintiff for $170,624.80.

Plaintiff, Tidal Gasoline Company, an Oklahoma corporation, on October 22, 1918, contracted to sell defendant, Western Petroleum Company, an Illinois corporation, 10,000,000 gallons of gasoline, delivery to extend from date of contract to December 31, 1919. Terms of payment were as follows:

"The price per wine gallon of said gasoline shall be three and one-half (3½) cents in buyer's cars, under the Standard Oil Company's tank wagon price, f. o. b. point of delivery, * * * Chicago market."

During the period from January 18, 1919, to July 7, 1919, during which time plaintiff delivered 6,824,992 gallons of gasoline, the Standard Oil Company sold from its tank wagons in Chicago gasoline at a differential rate dependent upon the quantity sold: Less than 100 gallons, 23 cents; 100 and over, but less than 250 gallons, 21 cents; 250 gallons and over, 20½ cents.

There was evidence that, in addition to the differential price at which gasoline was actually sold from tank wagons in Chicago, there existed another distinct price, which was announced to the trade in general; that it was upon this so-called "announced price" that contracts in the oil trade were based, and that the phrase "tank wagon price" referred to this "announced price," rather than to the price at which oil was actually sold from tank wagons in Chicago.

Plaintiff invoiced the gasoline delivered on the basis of 23 cents per gallon; defendant paid for it on the basis of 20½ cents, which payment plaintiff accepted, reserving, however, its right to sue for the balance of 2½ cents per gallon. Defendant pleaded payment. The

narrow issue thus presented requires the interpretation of the words "tank wagon price Chicago market."

. [1, 2] It is an elementary principle of judicial interpretation that the test to be applied is what the ordinary user of such language would understand the words under the circumstances to mean. Holmes, "The Theory of Legal Interpretation," 12 H. L. R. 417. Another familiar principle of construction provides that, while the standard of ordinary usage is prima facie the one to be applied, it is nevertheless competent to show that in point of fact in the particular trade to which the contract has reference the words to be construed have a peculiar and special trade meaning, and the parties, being members of that trade, must have understood the words in that special sense. Wigmore on Evidence, §§ 2463, 2464; Williston on Contracts, § 650. The two precise questions, then, are: (a) Was there sufficient evidence of the existence of the alleged trade usage to require its submission to a jury? and (b) Was the evidence admitted upon this point competent?

[3] Inasmuch as the burden is upon defendant to show error, we may consider these issues as presented by its assignments of error, which in order are: (1) Admission of evidence showing a peculiar trade usage of the term in question; (2) submission of such question to the jury; (3) plaintiff's conduct in asking questions in regard to matters upon this issue which had been excluded by the court.

[4-7] A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract. Its existence is a matter of fact, to be proved as any other matter of fact. It is competent for a witness experienced in the trade to state whether or not the usage existed, and, as long as he does not testify as to its effect, he is merely speaking as to a fact, and not stating a conclusion. Wigmore on Evidence, §§ 379, 1954; 17 Corpus Juris, 498, and cases there cited. The usage being established, those engaged in the trade will be presumed to have contracted with reference to it, and actual knowledge of it need not be proved. Silverstein v. Michau, 221 Fed. 55, 137 C. C. A. 79; Steidtmann v. Joseph Lay Co., 234 Ill. 84, 84 N. E. 640.

[8] As an incident pertaining to the usage contended for it was competent to show the practice of the Standard Oil Company in informing the trade of its "announced price," as well as the fact that during the period in dispute it did not, in accordance with its alleged practice, give any notice of change in the tank wagon price. Plaintiff offered, and the court received, the testimony of nine witnesses, all of whom were well qualified by experience and otherwise in the oil industry to speak intelligently. Four of these witnesses resided in Chicago; two of them being employees of the Standard Oil Company. The other five witnesses were residents of Oklahoma, in the so-called "Mid-Continent field."

They testified that "tank wagon price" was understood by the industry to mean "the announced price or basic price fixed by the Standard Oil Company of Indiana, at which the industry bought and sold gasoline"; that producers making long-time contracts depended up-

on this "announced price," and not upon the price at which oil was actually sold from tank wagons in Chicago. Witnesses testified to the practice of the Standard Oil Company of sending out to the persons with whom it dealt an announcement of the tank wagon price, and that during the period from January 18, 1919, to July 7, 1919, no announcement of a change in price was made to the "trade."

It appeared from the evidence that the differential price did not obtain throughout the "Chicago district," but was confined to points at which the Standard Oil Company came into competition with the Texas Oil Company. This left several sections in the district in which gasoline was sold on a straight basis of 23 cents per gallon. It appeared from the testimony of Hatmaker, the tank wagon manager of the Standard Oil Company, that the situation which gave rise to the dispute in this case, viz. the difference between the Standard Oil Company's announced price and the price at which sales were made from tank wagons in Chicago, had arisen once before, in 1914–15. Another witness testified that he "had a dim recollection" of the instance.

Defendant offered the testimony of eight witnesses, all of whom testified substantially that they had never heard that the word "tank wagon price" had other than its ordinary meaning. All of these witnesses resided in Chicago, except one, who lived in Missouri. Witnesses for both sides agreed that the term had come into use about 1915 or 1916.

[9] On this showing the issue was one for the jury. The fact that there is a conflict of evidence over the existence of an alleged custom does not require the court to take the question from the jury. The correct rule is stated in Milroy v. Chicago, Milwaukee & St. Paul Railway Co., 98 Iowa, 188, 67 N. W. 276:

"Now, while a few courts have held that a usage or custom cannot be established by a single witness, and others have held that it cannot be shown by a single witness if his testimony be contradicted, and still others have held that it cannot be established if there is a substantial conflict in the evidence, no matter what the number of witnesses, yet we think the true rule is that if plaintiff has produced evidence which when fairly and reasonably considered, would prove the alleged custom, the question then becomes one of fact for the jury, under proper instructions from the court, and that the mere fact of a conflict of testimony does not, of necessity, and as a matter of law, negative the alleged custom [citing cases]. Any other rule would defeat almost every custom sought to be established."

The fact that the phrase had not been in use longer than three or four years, that the situation in which the so-called "announced price" and the price at which gasoline was sold from tank wagons were different had arisen only once previously, and that there was a conflict of testimony as to the existence of the custom, were all matters for the jury to consider in determining whether or not plaintiff had made out a peculiar trade usage for the phrase "tank wagon price."

[10] Error is assigned because, it is claimed, plaintiff's counsel persisted in asking questions concerning the price at which defendant sold the gasoline, when its contract for such sale contained the same price terms as those in issue. Such evidence was excluded by the court, and our attention has been directed to several instances in the

record where the officers of defendant company were asked concerning its construction of these terms when dealing with others. The court consistently sustained the objections thereto.

It is now claimed that the persistence in pressing these questions to which objections were made and sustained constituted error; in other words, that counsel was able to get before the jury that which the court had excluded. With this position we do not agree. Plaintiff's counsel was endeavoring to preserve his record, believing such evidence was competent and admissible. The jury could not possibly have secured the impression that witnesses' answers would have been favorable or unfavorable to defendant. If uncertainty existed, counsel should have requested the court to charge the jury that no inference could be drawn from the failure of witnesses to answer any question to which objection had been made and sustained.

We do not deem other assignments of error worthy of special consideration.

The judgment is affirmed.