Argued March 15; affirmed March 27, 1934

HURST *v.* W. J. LAKE & CO., Inc.

(31 P. (2d) 168)

*P. J. Gallagher,* of Portland (Gallagher & Gallagher and Edward W. Fisher, all of Portland, on the brief), for appellant.

*R. R. Bullivant,* of Portland (Clark & Clark, of Portland, on the brief), for respondent.

CAMPBELL, J. This action was previously before the court (*Hurst v. Lake & Co., Inc.,* 141 Or. 306 (16 P. (2d) 627)) on an appeal from a judgment on the pleadings in favor of defendant; the judgment was reversed and the cause remanded. Thereafter, the cause came on for trial; both parties waived a jury and submitted their evidence to the court. The court made findings and conclusions in favor of plaintiff and entered judgment in conformity thereto. Defendant appeals.

The appellant presents the same question regarding custom or usage of trade affecting the meaning of terms used in contracts in connection with such trade, as was determined in this court on the former appeal, and in addition thereto appellant contends that there is no competent evidence in the record to support the findings of the court and more particularly that there is no evidence that a custom or usage prevailed in the trade at the time the contract was entered into as to the meaning of the terms, "50% protein content" and "minimum 50% protein content".

To establish the custom, plaintiff called as a witness E. W. Lazell, who qualified as an expert chemical engineer with experience in Portland since 1900. He testified that it was not possible to determine the protein content in any organic matter more closely than six-tenths of 1 per cent and that it is possible for the quantity of protein actually contained in the organic matter to be less than the analysis shows but not probable as such content generally is greater than the analysis would indicate.

Plaintiff also called George R. Clapp who testified that he has been in the employ of the Swift Packing Company for 25 years handling the by-products department, buying "horsemeat scraps" from the origi-

nal renderer as well as selling to the wholesale and retail trade; that a variation of one-half of 1 per cent of the guaranteed protein content was always permissible and such was the usage of the trade.

Frank Pederson, with an experience of seven years marketing "meat scrap" in Portland, testified to the same effect as to the usage attached to the meaning of the term "50% protein content".

Plaintiff testified in his own behalf that he had managed a plant manufacturing "meat scrap" for about 15 months during which time the factory was handling about 35,000 pounds per day and that he had heard and knew of many contracts calling for certain percentages of protein content and that the custom and usage of the trade that any "meat scraps" that analyzed within one-half of 1 per cent was considered by the trade as being a compliance with the terms of the contract. There was no objection by defendant to any of this testimony.

Opposed to this evidence is the testimony of the witnesses called on behalf of defendant, Mr. Baxter, Mr. Branchflower and Mr. Greaves.

■ Appellant also contends that if there was such a custom or usage in the trade plaintiff failed to show that defendant knew of it. Defendant admits that it was in the business of handling "meat scraps" for some considerable time, therefore if such a usage existed it would be presumed to have known it: *Harrison v. Birrell*, 54 Or. 410 (115 P. 141); *Gile v. Tsutakawa*, 109 Wash. 366 (187 P. 323); *Smith & Co. v. Russell Lumber Co.*, 82 Conn. 116 (72 Atl. 577); *Western Pet Co. v. Tidal Gas Co.*, 284 Fed. 82; *Silverstein v. Michau*, 221 Fed. 55. In addition to this, when the controversy first arose plaintiff wrote defendant a letter in which it was claimed that "minimum 50% protein content" meant

anything analyzing more than 49.5 per cent. In response to this letter defendant by its manager, Mr. Branchflower, wrote to plaintiff a letter in which he said:

"Now, as far as your contention is concerned about material that will analyze 49½% or better being classed 50% material, you are absolutely right. If our contract had been written 50% protein, we could sell as 50%, and then your contention would be absolutely right and we would not question anything for a minute, but when we wrote our contract the writer was very explicit in making it quite clear that the contract read a *minimum* 50%, which meant just exactly that, for we would have to get some material under 50% at the discount in order to be compensated based on the price we paid you."

 This letter would clearly indicate that defendant knew of such a trade custom, but his contention being that the contract by his terms destroyed the trade or custom.

"A custom, within the meaning of the law, if general, is incorporated into and becomes a part of every contract to which it is applicable; if local, of every contract made by parties having knowledge of or bound to know its existence." Sawtell v. Drew, 122 Mass. 229, quoted with approval in Harrison v. Birrell, supra.

This being an action at law, it is not for this court to weigh the evidence and to determine on which side it preponderates. There being some competent evidence to support the findings of the trial court, the judgment will not be disturbed.

The contention of counsel on the other branch of the case is the same as was made on the former appeal; as the law is laid down there, it becomes the law of the case and we adhere to it.

Finding no error, the judgment will be affirmed. It is so ordered.