### GRIFFIN MFG. CO. v. BOOM BOILER & WELDING CO.

No. 7182.

Circuit Court of Appeals, Sixth Circuit.
May 14, 1937.

210

Harold K. Bell, of Cleveland, Ohio (Cannon, Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, English, Quinn, Leemhuis & Tayntor, of Erie, Pa., Paul H. Keough, of Cleveland, Ohio, and Francis B. Quinn, of Erie, Pa., on the brief), for appellant.

A. E. Petersilge, of Cleveland, Ohio (Duncan, Leckie, McCreary, Schlitz & Hinslea, Frederick L. Leckie, and J. Harold Traverse, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment in an action on a contract, brought by appellee as the assignee of the seller (hereinafter called the Dailey Company) to recover the balance of the purchase price of certain equipment furnished for a steel strip pickling plant. The principal legal questions relate to the construction of the contract.

Appellant is engaged in making finished steel products in the manufacture of which it uses hot rolled steel. As the hot steel comes into contact with the air, scales of iron oxide are formed, which are removed by "pickling" through immersion in a sulphuric acid bath. Formerly appellant used a hand pickling process, but later it installed a mechanical pickling plant, out of which installation this controversy arose.

The plant was designed to secure a process of continuous pickling in which strips of rolled steel clamped together are pulled through a tank of acid. As the strips come to the plant in coils, the first step in the process is to unwind the coil. The outside end of each strip is fed through metal rolls which take out the bend in the coil. The strips are then joined by a metal clip inserted in holes made by a punch press. Between the acid tank and the punch press a pit is located in which surplus strips of steel are accumulated to allow the operator time to fasten the strips together and at the same time to permit the steel to pass through the acid tank at a uniform speed. The strips are then rinsed and run through a neutralizing solution after which they are unfastened and recoiled.

On August 7, 1929, the Dailey Company agreed with appellant "to furnish equipment for a 2, 4 Strand Pickling Plant for pickling four steel strips up to 12½" wide or two strips 24" wide and up to ¼" to ⁵⁄₁₆" in thickness . . ." Each item of equipment was to be paid for in thirty days after shipment, and unit prices were stated.

The contract concluded: "It is agreed that the Dailey Machine Construction Co. . . . will spend sufficient time at your plant to advise in the matter of erection work and putting the entire Pickling Plant in satisfactory working operation."

Appellant repeatedly claimed that the plant did not operate satisfactorily. A number of personal inspections were made by the president of the Dailey Company, and several test runs were made. Finally, in December, 1931, a new contract was entered into by the parties, the pertinent parts of which are as follows:

"WHEREAS, up to the present time the Dailey Company has not been able to furnish said pickling plant in accordance with said agreement, . . . it is agreed . . .

"That the Dailey Company shall have until the close of business, February 21, 1932, within which to complete said pick-

ling plant in accordance with the terms and conditions of said agreement of August 7, 1929 . . ." and

"That, if at the end of said period, to-wit, February 21, 1932, at the close of business, said pickling plant has been placed in satisfactory working operation by the Dailey Company as provided in said agreement of August 7, 1929, then the same shall be paid for by the Griffin Company . . ."

This contract was followed by a letter in which appellee wrote "it is our understanding, that the interpretation of, satisfactory working operation, is that, the pickling plant must be capable of producing a speed of sixty-six and two-thirds feet per minute, with a fifteen per cent loss in a ten hour run. The machine must hold up for more than two or three days run."

Appellant agreed to this definition of satisfactory operation, but said that the machine must "perform steadily for a period of not less than two weeks."

Further efforts were made by the Dailey Company and new tests were taken, but the plant did not operate to appellant's satisfaction. The equipment was not paid for, and this lawsuit followed.

It is appellant's principal claim that the first contract was a "satisfaction" contract under which the Dailey Company guaranteed that it would put the pickling plant in satisfactory working condition, that is to say, in condition to the satisfaction of appellant; that the agreement was not carried out, and that appellant therefore is not liable. Appellee contends that the first contract was an agreement to furnish equipment and to give advice as to satisfactory operation, which was given, and that the contract therefore was fully performed. In the alternative, appellee contends that the inefficient operation of the plant was due to appellant's lack of co-operation.

The gist of the controversy is presented in the charge of the court,[1] which in substance stated that while the original contract was an agreement to sell equipment and to give advice, the Dailey Company later obligated itself to put the plant in reasonably satisfactory working condition. The court also stated in effect that the ultimate question was whether the equipment furnished was reasonably fit for the purpose intended and in condition to operate at a speed of sixty-six and two-thirds feet per minute for two or three days or longer.

Appellant claims that the court's construction of the contract was incorrect, that the conduct of both parties, the second contract and its express terms made

[1] Charge of the Court.

"While as the contract was originally executed August 7, 1929, I think that the Dailey Company was to do no more than furnish the mechanical equipment in workable order, and reasonably and mechanically fit to become a part of the defendant's pickling plant when placed in operation with other equipment to be furnished and installed by the Griffin Company, and capable of doing the type and character of pickling operation contemplated by the parties, as evidenced by the contract, and that the Dailey Company was only to spend sufficient time at the defendant's plant to advise in the matter of erection work and the putting of the entire pickling plant in satisfactory working operation. Yet I am unable to escape the conclusion that as the contract was executed and carried out by the parties, the Dailey Company obligated itself to put the pickling plant in reasonably satisfactory working condition, and that this meant what the parties themselves understood, as evidenced by an exchange of letters between them in December of 1931. . . .

"It is my opinion that whatever uncertainty existed as to what the obligations of the Dailey Company were in respect of this pickling plant, they were resolved by this exchange of communications between the parties. . . .

"What we are concerned with here, under this evidence, is the determination of the ultimate question of whether the Dailey Machine Company furnished pickling plant equipment which was reasonably fit for the purpose for which it was purchased and intended; and whether the Dailey Company put the equipment and machinery in condition to operate at a speed of 66⅔ feet per minute with not more than 15% delay; and that such operation could be continuously maintained for two or three days, or perhaps for a longer period.

"In other words, has the plaintiff proved substantial compliance with the obligations of the contract upon its part to be performed? It is contended further by the plaintiff that much of the difficulty connected with the efforts to put this plant in a satisfactory operating condition was due to the fault of the defendant company in the respects which I have earlier stated to you."

the agreement a satisfaction contract, and that the court therefore erred in not so charging the jury, and erred in submitting the issue of lack of co-operation to the jury.

■ We think the court correctly construed the contract. The first agreement does not provide for the sale of a pickling plant. It lists certain equipment to be sold as units, and charges unit prices, to be paid for in thirty days after shipment. The last item was shipped in May or June, 1930. The contract does not guarantee that the plant will operate to the satisfaction of appellant, but states that the Dailey Company will advise in the matter of putting the plant in satisfactory operation. Appellant's contention calls for a strained construction of ordinary words which, by well-established principles, must be given their ordinary and normal meaning. Corbett v. Winston Elkhorn Coal Co., 296 F. 577 (C. C.A.6). Cf. Hawkeye Commercial Men's Ass'n v. Christy, 294 F. 208, 40 A.L.R. 46 (C.C.A.8) ; Western Petroleum Co. v. Tidal Gasoline Co., 284 F. 82 (C.C.A.7). The clause cannot on any theory be distorted into a guaranty. Since the agreement is plain and unambiguous, the court did not err in refusing to permit appellant to present evidence as to the negotiations which led up to the execution of the contract. Ries v. Dodson, 46 F.(2d) 68 (C.C.A.3). The oral statements of the parties were merged in their written agreement.

■ It is true that the second contract states that the Dailey Company has failed to furnish the pickling plant in accordance with the first agreement, and provides that the equipment is to be paid for if by a certain time the pickling plant has been placed in satisfactory operation. However, the second contract incorporated the first agreement by reference. It stipulates that the plant shall be placed in satisfactory operation, as provided in the agreement of August 7, 1929. That agreement, however, provides only that the Dailey Company shall give advice as to putting the plant in satisfactory operation and thus the second agreement imparts ambiguity to the entire transaction. The court correctly held that the parties themselves cleared up this ambiguity by their definition of operating efficiency, and that neither contract requires operation to the satisfaction of the buyer. Appellant cites in support of its position Singerly v. Thayer, 108 Pa. 291, 2 A. 230, 56 Am.Rep. 207,

which holds that when a contract of sale provides that the thing sold is to be satisfactory, it means to the satisfaction of the buyer. The instant contract was consummated and was to be performed in Pennsylvania, and hence the Pennsylvania law applies. Under the Pennsylvania cases, however, where the contract itself provides definite tests or specifications, and the required performance to the satisfaction of the buyer is not the sole determining factor, reasonable satisfaction or substantial performance in such a manner as to conform to the standards provided is all that is required. Lord Co. v. Industrial D. & F. Works, 252 Pa. 421, 97 A. 573.

■ Here the parties had set up standards for the required performance, and while the word "satisfactory" was used in the second contract, it was not the sole determining factor. Hence the court correctly charged that the ultimate question was whether there was such substantial performance as to conform to the standards agreed upon. Also the charge on the issue of co-operation, was proper. Obviously when only part of the equipment was furnished by the Dailey Company, and the plant was operated by appellant, neither the Dailey Company nor appellee could give satisfactory performance without appellant's co-operation. Under appellant's theory, the Dailey Company was obligated to perform work to put the plant in satisfactory operation. But in every contract for the doing of work there is an implied agreement that the contractor will not be delayed or obstructed by the person for whom the work is to be done. Hart v. American Concrete Steel Co. (D.C.) 278 F. 541, affirmed 285 F. 322 (C.C.A.2). It is not seriously questioned that the items of machinery furnished by the Dailey Company functioned properly. The gist of appellant's contention is that the plant as a whole did not satisfactorily perform. Without describing the testimony in detail, it is sufficient to say that the plant, when operated under favorable conditions, with an experienced crew and with properly selected coils, pickled the steel at speeds of from 50 to 75 feet per minute. Also there is ample testimony that the loss of efficiency complained of was due to appellant's failure to co-operate. While the Dailey Company spent ample time in giving advice for the purpose of putting the plant in satisfactory operation, appellant did not follow the advice given. In addi-

tion to appellant's failure to follow advice as to specific steps in the process, it did not, as repeatedly counseled by the Dailey Company, train its men in the gradual use of the plant, working up from one to four strips, but ran it at undue speed, operating four strips simultaneously before the men were experienced in the process, thus greatly lowering production efficiency. Appellant's superior officers were not cooperative, and this attitude was reflected by the men. There was substantial evidence to submit to the jury the issues of substantial performance and lack of cooperation.

We find no reversible error in the charge or in the exclusion of evidence, and the judgment is affirmed.