## U. S. TEX OIL CORPORATION v. KYNERD.

(Circuit Court of Appeals, Fifth Circuit. February 9, 1924.)

No. 4153.

1. **Mines and minerals ⟨key⟩74—Assignment held to entitle assignor to stated fractional parts of all oil produced, without deduction of amount used in operations.**

Where a lease entitled lessor to a one-eighth part "of all oil produced and saved," and gave lessee the right to use oil for its operations free of cost, an assignment of the lease conveying all of the oil, gas, and mineral rights, except the one-eighth royalty, and requiring the assignee to pay to the assignor stated fractional parts of "all oil and gas produced," entitled the assignor to stated fractional parts of seven-eighths of all the oil and gas produced, without deduction therefrom of the amount used by the assignee in operations.

2. **Mines and minerals ⟨key⟩74—Amount due from assignee to lessee held based on price received by lessee, and not posted prices.**

Under assignment of oil and gas lease, giving the lessee stated fractional parts of all oil and gas produced, and giving the assignee the sole right to handle, market, and dispose of all the oil and gas produced, "including the right to take over to his own use any portion thereof at the posted prevailing prices in the field at the time of doing so," the assignee was liable to the lessee on the basis of the prices actually received for oil sold and not used by the assignee, and not for the posted prices.

3. **Customs and usages ⟨key⟩17—Provision of assignment of oil and gas lease held not subject to contradiction by parol evidence as to general understanding in oil business.**

Provision of assignment of oil and gas lease giving the assignor certain fractional parts of "seven-eighths of the oil and gas produced" could not be contradicted by parol evidence that it was generally understood in the oil business that "seven-eighths of the oil produced" meant seven-eighths of the oil, less the fuel oil.

4. **Customs and usages ⟨key⟩17—Evidence of usage or custom cannot vary express terms of written contract.**

An express written contract, embodying in clear and positive terms the intention of the parties, cannot be varied by usage or custom.

Grubb, District Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Action by Walter David Kynerd against the U. S. Tex Oil Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Nelson Phillips, of Dallas, Tex., and Ike A. Wynn and E. B. Robertson, both of Fort Worth, Tex. (Phillips, Townsend & Phillips, of Dallas, Tex., and Wynn & Robertson, of Fort Worth, Tex., on the brief), for plaintiff in error.

Joseph Manson McCormick, of Dallas, Tex. (F. M. Etheridge, J. M. McCormick, H. L. Bromberg, and Paul Carrington, all of Dallas, Tex., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. This was an action by the defendant in error to recover an amount claimed to be due under an assignment by him to the plaintiff in error of two oil, gas, and mineral leases. The parties are herein referred to by their designations in the trial court. Each of the two leases, which were made to plaintiff, required plaintiff "to deliver to the credit of the lessor free of cost, in tanks or pipe lines to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises," and contained the following:

"Lessee shall have the right to use, free of cost, gas, oil, and water produced in said land for all operations thereon, except water from wells of lessor."

By written contract dated November 15, 1921, plaintiff agreed to sell and convey said leases to Morris Frankel, trustee for defendant; that contract stating:

"Which conveyance shall convey all of the oil, gas and mineral rights in said tracts of land, except a one-eighth (⅛) royalty reserved by the owners of said land."

And thereby Frankel, as such trustee, agreed to pay plaintiff for such conveyance $700,000, $200,000 thereof to be paid in cash in two installments as stipulated. That contract contained the following:

"It is mutually agreed that out of the production of oil and gas from said lease that second party [Frankel, trustee] is to retain and reimburse himself the sum of fifty thousand dollars ($50,000) out of the three-fourths (¾) of seven-eighths (⅞) of all oil and gas produced from said lease, and the remaining one-fourth (¼) of such oil and gas shall be paid to the first party on the remaining unpaid purchase price, and thereafter second party agrees to pay first party one-half (½) of seven-eighths (⅞) of the proceeds of all oil and gas produced on said lease until the full consideration of the aggregate sum of seven hundred thousand dollars ($700,000) is paid.

"The first party obligates himself to convey said lease and property by a good and sufficient conveyance clear of encumbrance and conveying seven-eighths (⅞) of the oil and gas and other minerals in and under said land. * * * It is further agreed that the second party shall have the sole right to handle, market, and dispose of all oil and gas produced from said lease, including the right to take over to his own use any portion thereof at the prevailing posted prices in the field at the time of doing so. It is understood and agreed that second party may assign this contract and the assignee shall assume the obligations of this contract."

Defendant made the transfer stipulated for by an instrument dated November 28, 1921. That instrument, after referring to and quoting from the contract dated November 15, 1921, contained the following:

"Now, therefore, I, the said W. D. Kynerd, for and in consideration of the sum of two hundred thousand ($200,000) dollars cash to me in hand paid, by Morris Frankel, trustee, receipt of which is hereby acknowledged and for the further consideration of the obligation and undertaking of the said Morris Frankel, trustee, to pay the further sum of five hundred thousand ($500,000) dollars, as follows: Out of the production of oil and gas from said leases, said Morris Frankel, trustee, shall retain unto himself three-fourths (¾) of seven-eighths (⅞) of the oil and gas produced from said lease until he shall have reimbursed himself the sum of fifty thousand ($50,000) dollars, the remaining one-fourth (¼) of said seven-eighths (⅞) of said oil and gas shall be paid to W. D. Kynerd upon the five hundred thousand ($500,000) dollar payment mentioned last above, and after said Morris Frankel, trustee, shall have reimbursed himself the said fifty thousand ($50,000) dollars, in the manner above set

forth, then and thereafter one-half (½) of the seven-eighths (⅞) of the proceeds of all oil and gas produced on and from said leases shall be paid unto W. D. Kynerd until the full aggregate consideration of seven hundred thousand ($700,000) dollars has been paid, and the said Morris Frankel, by accepting this conveyance, obligates and binds himself to make said payment accordingly, and in consideration of said cash payment of two hundred thousand ($200,000) dollars, and the premises of guarantee to pay the further sum of five hundred thousand ($500,000) dollars, as aforesaid, I have granted, sold, and conveyed, and by these presents do grant, sell and convey, unto the said Morris Frankel, trustee, of New York City, those two certain oil, gas, and mineral leases upon the lands situated in Limestone county, Texas, as part of the Pedro Varela survey and described in said contract set out above together with the oil well now located on the second above described tract. This conveyance includes seven-eighths (⅞) of all of the oil, gas, and minerals and mineral rights in and to said two tracts of land, together with the oil well drilling equipment and appurtenances, including all tanks, lines, tools, cables and all other personal property now owned by me and located upon said land and this conveyance is made subject to the terms and provisions of said leases."

The first payment from oil from the leased land was made by defendant's check to plaintiff in February, 1922. Thereafter payments were similarly made each month prior to the bringing of the suit. Those payments were calculated by the defendant at the posted prices of oil and on the basis of the amount of oil produced, less the amount used by the defendant for operation. Defendant received for the oil sold by it more than the posted prices prevailing at the times of the sales. On October 12, 1922, plaintiff and defendant made an agreement, evidenced by a written instrument of that date. That instrument, after reciting the making of the above-mentioned assignment of leases, contained the following:

"Whereas, in said transfer and assignment of lease the second party was to pay the first party a certain amount in cash and a certain amount to be paid out of the oil produced from said premises, and second party was to be reimbursed out of ¾ of ⅞ of the oil for certain improvements and developments made by it on said premises, and after said reimbursement first party was to be paid the balance due it for the purchase price of said lease out of ½ of ⅞ of the oil produced from said premises; and

"Whereas, second party has been reimbursed for the development and improvements paid on said premises in accordance with said contract, and first party has received a portion of the amount due it out of ½ of ⅞ of the oil, but there yet remains due to first party a balance due to it out of ½ of ⅞ of the oil; and

"Whereas, under said contract the said second party drilled * * * wells on said tract of land above described, but the production therefrom has greatly diminished and is rapidly decreasing; and

"Whereas, each of said parties believes that the production from said lease can be increased by drilling to a deeper sand or sands, and it is the wish and desire of each party that said deeper sand or sands be drilled and developed:

"Now, therefore, know all men by these presents that, in order to further develop said premises and to drill the same into the deeper sand or sands, the first party, in consideration of one dollar to it cash in hand paid by second party, the receipt of which is hereby acknowledged, and the further consideration of the increase in the anticipated production from said tract of land, the first party has this day and does by these presents contract and agree with second party that it may drill any or all of said wells now on said tract of land to a greater depth in order to increase the production, if possible, from said deeper sand or sands, or second party may, if it seems proper, drill new wells on said tract to a greater depth than the present producing sand, and

it is agreed that, if oil is found in said deeper sand, the second party shall be first reimbursed out of 14/16 of the oil or gas produced from said deeper sands for the costs and expense of drilling said well or wells deeper or of drilling any and all new wells which it may drill to said deeper sands. It is understood, however, that the second party shall not be reimbursed for said development of deeper sands from any oil or gas produced from the present sands or from the present production from said wells, but is only to be reimbursed from the production, if any, obtained from the deeper sands, and, if no production is obtained from said deeper sands, then second party is not to be reimbursed for such work and development necessary in drilling said well or wells to a deeper sand; the intention being that second party may drill said well or any new wells it may see fit to drill on said premises to a deeper sand, and from 14/16 of the production derived from said deeper sands to reimburse itself for all proper costs and expense in drilling any well or wells to the deeper sands out of the entire production of all the wells deepened or drilled to the deeper sands, but it is not to be reimbursed or paid for said expense or developing said deeper sands from the production from the sands which are now producing oil from said premises.

"It is further agreed that after the second party has been so reimbursed for said work and expense in developing the deeper sand that it shall resume payment to first party out of 7/16 of the oil produced from said premises from such deeper sand or sands the amount then remaining due to first party on account of the purchase price of said land, in accordance with the original contract and conveyance first above mentioned, the intention being not to abrogate or to in any way set aside the original contract and conveyance herein first above set out, but the same shall remain in full force and effect, save and except as manifest by the terms and conditions hereinabove set forth; it being expressly understood and agreed the second party shall continue to operate the lease and will endeavor to produce oil in commercial quantities and will continue to pay to first party on the 10th and 25th day of each month in the future, as in the past, the proceeds of 7/16 of all the oil produced from the present sand; and in addition thereto, the second party, after it has been reimbursed as aforesaid, shall pay to first party, in like manner on the same dates, the proceeds of 7/16 of the oil produced from any deeper sand or sands."

Testimony in behalf of plaintiff was to the effect that he did not know until a short time before the suit was brought that defendant had not been paying him for fuel oil used by the defendant in its operations on the leased lands, or that the payments made to him were based on posted prices for oil, and not on the prices paid to defendant for oil produced. Each of defendant's checks was accompanied by a voucher which purported to state the amount of oil produced during the period covered by the check and the prices thereof. The defendant claimed an offset or credit based on an alleged mistake made against itself by making its check for its first payment in February, 1922, for an amount in excess of that then owing. The amount sued for was the difference between the amounts paid and what those amounts would have been if the calculations had been based on the oil produced, including fuel oil used by defendant, and at the prices actually received by defendant for oil sold, instead of at the posted prices. The court sustained an objection by plaintiff to testimony offered by defendant to the effect that it is generally understood in the oil business that seven-eighths of the oil produced under the terms of such a lease means seven-eighths of the oil less the fuel oil and that the one-eighth royalty in such lease means one-eighth of the oil and gas produced less the fuel oil. The court instructed the jury to find

in favor of the plaintiff for the amount sued for, less the amount of the overpayment claimed by the defendant. The above-mentioned rulings were duly excepted to and are assigned as errors.

[1] The contract dated November 15, 1921, and the assignment of the leases in pursuance of that contract specifically referred to the leases which were assigned. Each lease obligated the lessee, the plaintiff, to deliver to the credit of the lessor in tanks or pipe lines the equal one-eighth part of all oil produced and saved from the leased premises; the lessee having the right to use for operations, free of cost, oil produced on the leased land. By the assignment plaintiff conveyed to defendant "all of the oil, gas, and mineral rights in said tracts of land, except a one-eighth (⅛) royalty reserved to the owners of said land," and defendant agreed to pay to plaintiff stated fractional parts, not, as stated in the leases, "of all oil produced and saved from the leased premises," but of all oil and gas produced from the leased premises. The parties having the leases before them when the agreement to assign and the assignment were executed, it cannot well be supposed that in those instruments they would have described the thing to be divided between them in stated proportions by language distinctly different from that used in the leases to describe what was to be divided between the lessor and the lessee, if the words "seven-eighths (⅞) of all oil and gas produced" had been intended to mean seven-eighths of all oil and gas produced, less the amount thereof used by the defendant in operations. The explicit language of the assignment is inconsistent with the existence of an intention to entitle the assignee to "retain unto himself," in the two situations mentioned, more than the stated fractions of seven-eighths of the oil and gas produced from the leased lands. The assignment conveyed to the defendant seven-eighths of all oil and gas produced from the leased land, and obligated the defendant to account to the plaintiff for specified fractions of such seven-eighths.

[2] The defendant contended that the amount for which it was liable should be determined, not by what it actually received for oil sold by it, but by the posted prices prevailing when oil produced was sold by it. That contention is based upon the following provision of the contract dated November 15, 1921:

"It is further agreed that the second party shall have the sole right to handle, market, and dispose of all oil and gas produced from said lease, including the right to take over to his own use any portion thereof at the prevailing posted prices in the field at the time of doing so."

A result of sustaining that contention would be to deprive the plaintiff of the amount of, the difference between what his share of the oil was sold for and what that share would have brought, if it had been sold for the smaller posted prices which prevailed when the sales were made. The language of the stipulation as to "prevailing posted prices in the field" shows that it was intended to apply only to oil taken over by the defendant to its own use. The quoted provision entitled the defendant to take over to its own use any portion of the oil and gas produced, and to be accountable therefor "at the prevailing posted prices in the field at the time of doing so." The provision does not purport to confer on the defendant the right to sell plaintiff's share of

oil produced, and to discharge the resulting liability by paying to the plaintiff less than the price received therefor. The selling agent was not given the right to withhold from its principal part of the price received for the latter's property. No evidence adduced warranted a finding that plaintiff relinquished or lost the right to be paid for his share of the oil produced in accordance with the terms of the assignment contract.

[3, 4] The court's above-mentioned ruling in sustaining an objection to testimony offered by the defendant was not erroneous. The defendant could not have been injured by the rejection of the part of the testimony offered, which was to the effect that the royalty provisions of the leases had the meaning which was expressed by the language of those provisions. The part of the testimony offered which was to the effect that it is generally understood in the oil business that seven-eighths of the oil produced under the terms of such a lease means seven-eighths of the oil less the fuel oil was properly rejected, because it was repugnant to or inconsistent with the contract of the parties. The intention of the parties evidenced by their use of the words "seven-eighths (7/8) of the oil and gas produced," was not subject to be varied or contradicted by evidence to the effect that that language had a meaning not expressed by it. An express written contract, embodying in clear and positive terms the intention of the parties, cannot be varied by evidence of usage or custom. Grace v. American Central Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932; Tilley v. County of Cook, 103 U. S. 155, 26 L. Ed. 374; Covington v. Kanawha Coal & Coke Co., 121 Ky. 681, 89 S. W. 1126, 3 L. R. A. 248, 123 Am. St. Rep. 219.

No evidence adduced was inconsistent with the conclusion that plaintiff was entitled to recover the amount for which a verdict in his favor was directed. The conclusion is that there was no error in the above-mentioned rulings.

The judgment is affirmed.

GRUBB, District Judge, dissents.