HANOVER FIRE INS. CO. OF NEW YORK
v. MERCHANTS' TRANSP. CO.

(Circuit Court of Appeals, Ninth Circuit.
November 22, 1926.)

No. 4876.

1. **Insurance ⊚⇒435—Protection and indemnity policy held to cover loss of life from negligence of shipowner, unless so gross as to amount to willful wrong.**

Protection and indemnity insurance policy *held* to cover damages paid for loss of life arising from negligence of ship or shipowner, unless so gross as to amount to willful, deliberate, and intentional wrong.

2. **Insurance ⊚⇒436—Under protection and indemnity policy, gross negligence of insured would constitute fraud against insurer.**

Gross negligence of insured, under protection and indemnity policy, would constitute fraud against insurance company.

3. **Appeal and error ⊚⇒1056(3)—Any error in excluding evidence not tending to establish fact for which offered is harmless.**

In action on protection and indemnity policy, exclusion of oral opinion of trial judge in

limitation proceeding, offered to show shipowner guilty of gross negligence, if error, *held* not prejudicial, where opinion did not support offer.

4. **Insurance ⊚⇒285½—Protection and indemnity policy held not voided by failure of insured to give information concerning unseaworthiness of vessel.**

Under protection and indemnity policy, failure of insured to give information concerning unseaworthiness of vessel, no inquiry being made, *held* not fraud avoiding policy; strict rule of maritime insurance being inapplicable.

5. **Insurance ⊚⇒139—Contracts of insurance against insured's own negligence are not against public policy.**

Contracts insuring common carriers, shipowners, contractors, and others against loss from their own negligence are not against public policy.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by the Merchants' Transportation Company against the Hanover Fire Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

S. Hasket Derby and Joseph C. Sharp, both of San Francisco, Cal., and Benjamin S. Grosscup and Charles A. Wallace, both of Seattle, Wash. (Forrest E. Single, of New York City, Derby, Single & Sharp, of San Francisco, Cal., and Grosscup & Morrow, of Seattle, Wash., of counsel), for plaintiff in error.

O. G. Ellis, John D. Fletcher, and Robert E. Evans, all of Tacoma, Wash. (E. M. Hayden, M. A. Langhorne, and F. D. Metzger, all of Tacoma, Wash., of counsel), for defendant in error.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

RUDKIN, Circuit Judge. This was an action on a protection and indemnity policy of insurance. The policy was issued November 21, 1923, by the Hanover Fire Insurance Company of New York, in favor of the Merchants' Transportation Company, and covered a fleet of four vessels, of which the T. W. Lake was one. The policy ran for a term of one year from date, and provided indemnity, among other things, for loss of life which the insured should become liable to pay and did pay during the term. The amount of the insurance or indemnity as to the Lake was limited to $13,500, but it was provided that, if the liability of the assured for loss was

contested with the consent in writing of the insurer, the latter would pay a portion of the costs of the defense.

December 5, 1923, or about two weeks after the issuance of the policy, the Lake foundered and sank in Puget Sound, resulting in the loss of the vessel and her entire crew. Claims were thereupon made upon the transportation company for damages for death by wrongful act, by the personal representatives of some of the members of the crew, and the transportation company immediately filed a petition for limitation of its liability under the federal statute, wherein it sought an adjudication that it was not responsible for the loss of life, or, if so, that its liability should be limited to the value of the wreck of the Lake and pending freight, amounting to the sum of $311.51.

The petition averred that at all times prior to the accident the Lake was in all respects seaworthy, and that the loss of the vessel and those on board was occasioned and incurred without the privity or knowledge of the petitioner. This allegation was denied by answer and it was affirmatively averred that the hull, deck, and superstructure of the Lake were old, worn, decayed, rotten, weak, patched, leaky, and about to fall to pieces; that she was wholly unfit to go to sea, or to navigate upon any waters whatsoever; and that her unseaworthy condition was well known to the officers, directors, and agents of the petitioner. In addition to this averment, the answer, by way of an affirmative defense, set forth many particulars in which the Lake was unseaworthy, and averred that the directors, officers, and agents of the owner well knew her condition when she was sent to sea.

Upon final hearing the court denied the petition for limitation of liability and awarded damages to the claimants and against the petitioner in sums aggregating approximately $30,000. These several amounts were paid, and the present action was thereupon commenced by the insured against the insurance company to recover the amount of the policy. A judgment for the plaintiff has been brought here for review by writ of error.

This form of policy is now in common use, and from the standpoint of the insurance company the case is important, because of the principle involved, rather than because of the amount of the recovery. Both parties concede that there is no implied warranty of seaworthiness in a policy of this kind, as in the case of an ordinary marine policy, and that the fact of unseaworthiness does not of itself bar a recovery. Eagle Star & British

Dominions Ins. Co. v. Geo. A. Moore & Co. (C. C. A.) 9 F.(2d) 296. Both parties likewise concede, for the purposes of this case, at least, that if the negligence of the shipowner in sending an unseaworthy vessel to sea is so gross as to amount to a willful, deliberate, and intentional wrong there can be no recovery. Beyond these concessions, however, the parties are wide apart. The plaintiff in error contends, first, that the court below erred in excluding from the jury the oral opinion of the trial judge in the limitation proceedings, because that opinion shows or tends to show that the shipowner was in fact guilty of that character of negligence which it is conceded would bar a recovery; second, that the denial of the petition for limitation of liability, on the ground that the loss occurred with the privity or knowledge of the shipowner, bars a recovery; and, third that the failure of the insured to make known the true condition of the ship at the time the policy was applied for avoids the contract of insurance.

The differences between counsel arise largely from their different conceptions as to the nature of the contract involved. Counsel for the plaintiff in error contends that it is analogous to the ordinary marine policy and is controlled by the established rules of law applicable to such policies, while counsel for the defendant in error contends that it is analogous to the ordinary indemnity policy, and is controlled by the rules of law applicable to that class of insurance. While the two classes of insurance may have something in common, their objects and purposes are essentially different. In speaking of a similar policy in the Eagle Star Case, supra, this court said:

"It will be conceded, of course, that there is an implied warranty of seaworthiness at the inception of the voyage as a necessary incident to every contract of marine insurance, and, if that rule is applicable here, it becomes necessary to consider the question of seaworthiness. In our opinion, however, the policies in suit are subject to no such limitation or exception. As the name imports, they are general contracts of indemnity, covering loss or damage to any goods, merchandise, freight, or other things or interests whatsoever, whether on board or not on board, which may arise from any cause whatever, excepting only liability for shortage of cargo. It seems to us that more comprehensive language could not well have been used, and that no warranty of seaworthiness can be implied. Such is the construction given similar contracts by the courts of the

country in which the contracts in suit were made, and that construction meets with our approval, if, indeed, it should not be accepted as controlling."

[1] The object of this form of insurance is to afford protection to shipowners, in addition to that afforded by the ordinary marine policy, and the contract should be construed with that object in view. When so construed, we are clearly of opinion that it covered damages paid for loss of life arising from the negligence of the ship or shipowner; for, in the absence of negligence on the part of either, there would be no loss or liability to be indemnified against. And, if the policy covered loss arising from negligence, the courts will not attempt to distinguish between the different kinds or degrees of negligence, unless, as agreed by counsel, the negligence was so gross as to amount to a willful, deliberate, and intentional wrong.

[2] Negligence of the latter class would constitute fraud as against the insurance company. The only evidence offered in support of this charge of negligence was the oral opinion of the trial court in the limitation proceedings. That opinion set forth many reasons why, in the opinion of the court, the Lake was unseaworthy at the time of the loss. The opinion itself was not reduced to writing, was never approved by the trial judge, and was never made a part of the record by any action or order of the court. It was simply reproduced from the notes of the reporter, who reported the limitation proceedings, nearly a year after the trial. We entertain grave doubts whether an opinion so delivered and preserved was competent for any purpose, and more especially whether it was competent for the purpose for which it was offered. The opinion simply set forth certain facts and certain reasons which prompted the court to deny the petition for limitation of liability. In some measure, at least, the parties to this action had no opportunity to combat the facts thus stated or the reasons thus given; no appeal would lie from the opinion itself, and it would seem unjust to hold the present litigants bound by what was there stated.

[3] But, aside from this, the opinion taken at its face value simply held that the Lake was unseaworthy because of certain defects in original construction many years before, and because of other defects brought about by age and decay. None of these defects occurred at or near the time of the loss of the vessel, which had been continuously in commission, and the opinion, if admitted, would not establish negligence on the part of

the owner such as would preclude a recovery on the policy. For this reason the ruling of the court below rejecting the opinion was not prejudicial, if erroneous.

[4] When the policy of insurance was applied for, no information was given by the assured as to the then condition of the vessel, and no information was sought by the insurer. Under such circumstances, if the case is controlled by the strict rule of maritime insurance, the failure of the assured to give information concerning the unseaworthy condition of the vessel would no doubt avoid the policy. But as to other classes of insurance a more liberal rule obtains.

"According to the strict rule of maritime insurance, any omission to communicate a material fact which insured is under an obligation to disclose will vitiate the policy, although there may have been no intent to deceive and the omission may have been unintentional or with the belief that the fact is immaterial. The English and Canadian courts apparently heve extended this doctrine generally to insurance upon risks of all natures, but in the United States the trend of the later decisions as to other than marine risks, notably with reference to fire and life insurance, is to require that the nondisclosure of a fact which is not inquired about shall be fraudulent in order that it shall vitiate the policy, and this rule has been applied, although the policy provides that it shall be void if insured has concealed any material fact or circumstance concerning the insurance or the subject thereof." 32 C. J. 1271.

Here no fraud was alleged or proved, aside from the mere failure of the assured to communicate facts concerning which no inquiry was made, and, if we are correct in our conclusion that this was not strictly a marine risk, such failure did not of itself constitute a defense.

[5] The right of common carriers, shipowners, contractors, physicians and surgeons, and others to protect themselves by insurance against losses arising from their own neglect, is no longer open to question; for, as said by Mr. Justice Story long ago in Waters v. Merchants' Louisville Insurance Co., 11 Pet. 213, 221 (9 L. Ed. 691): "There is nothing unreasonable, unjust, or inconsistent with public policy, in allowing the assured to insure himself against all losses from any perils not occasioned by his own personal fraud."

As we construe the policy in suit, the plaintiff in error has in express terms obligated itself to indemnify the defendant in

error against just such losses as are claimed. Some of the questions involved are novel, and by no means free from difficulty; but we are not prepared to say that prejudicial error was committed upon the trial in the court below.

The judgment is therefore affirmed.