CONTINENTAL INS. CO., Inc., v. SABINE TOWING CO., Inc.

No. 9547.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1941.

Rehearing Denied March 20, 1941.

McCORD, Circuit Judge, dissenting.

————————

H. C. Hughes, of Galveston, Tex., and Arthur M. Boal, of New York City, for appellant.

M. A. Grace, Edwin H. Grace, and Daniel H. Grace, all of New Orleans, La., opposed.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was on two insurance policies to recover, up to the policy limits, $40,000 on the two, losses and expenses incurred by the insured in connection with the loss of the steam tug Coney, and in addition, for the costs of prosecuting and defending suits brought on account thereof.

The defense to the whole recovery was, that as settled by the judgment and decision in the proceeding, Sabine Towing Company brought to limit its liability,[1] the loss of the tug was with fault and privity on the part of the assured[2] and was not embraced in, but was excluded from, the coverage of the policies. The defense to the recovery for attorneys' fees, costs, and other disbursements in connection with the prosecution and defense of suits brought on account of the Coney loss was that the limiting provision of the policy, "liability hereunder in respect of any one accident, is limited to the amount declared and insured," included the costs of prosecuting and defending suits; and that costs, attorneys' fees, etc., incurred in con-

---

[1] Sabine Towing Company v. Brennan, 5 Cir., 72 F.2d 490.

[2] This company hereby undertakes to make good to the assured * * * such loss and/or damages and/or expenses as the assured shall without fault or privity on the part of the assured become liable to pay and shall pay not exceeding the amount of this policy.

nection therewith, could not be recovered as additional to the $40,000 so limited.

The district judge agreed with plaintiff, that the words of the policy provision "without fault or privity on the part of the assured" must be taken as having application only to willful, deliberate, and intentional acts or to negligence so gross as in law to amount to willfulness and intention. He agreed too, that the limitation of recovery under the policy was with reference to the loss itself and had no application to costs of prosecuting or defending suits growing out of it. He therefore gave judgment for $40,000, since plaintiff had been compelled to pay that much and more, and for $32,311.98 in addition as costs of prosecution and defense. The insurer is here complaining of the judgment as entirely erroneous, and in the alternative, as erroneous in allowing recovery in excess of $40,000.

It is conceded by appellee that on the trial of the proceeding to limit liability, the district judge found: (1) that the sinking of the Coney was due to negligence in making repairs to it and that that negligence rendered the vessel unseaworthy; (2) that all of the repairs were made by and through plaintiff's executive officers and its port superintendent and engineer, all of whom personally superintended the repairs and changes made on the vessel; (3) that none of the officers having exclusive charge of and superintending the repairs on the Coney, had any expert knowledge of ship stability and that petitioner did not employ or consult any stability expert or naval architect in making the said repairs and adding to the Coney the extra weight which increased her instability and made her unseaworthy; (4) that Sabine Towing Company was guilty of negligence in failing to have the Coney in seaworthy condition before it set out on its voyage and that this negligence directly and proximately was the cause of the sinking of the Coney and the death of all the crew; (5) that each and every of the above mentioned negligences existed with the privity and knowledge of the petitioner and its executive officers; (6) and that he concluded as a matter of law, that upon all the facts found, petitioner was not entitled to limit its liability. It is conceded too that these findings and the judgment based thereon were approved and affirmed in this court in an opinion in which,. reviewing and summing up the evidence upon the question of privity, this court said: "We think it plain, in fact, the record leaves no room for question, that whatever may be said in favor of exoneration altogether, because of failure to prove negligence, this is not a case for limitation of liability. Whatever was done with the tug or about it was the act of the owner through its managing officers, and, if there was negligence, the owner was privy to it. All of those who testified for appellant make this clear. While they testified positively that Guy was the port engineer and in charge of repairs, they testified too that he made no serious repairs without consulting the officers, and that everything that was done by him in actually equipping this vessel was done under their supervision and with their approval. Under these circumstances, if there was negligence, the officers were privy to it, and appellant, present in the presence of its managing officers, was privy to it too." Finally, it is conceded that if as contended by appellant, the words "fault or privity as used in the policy" are the substantial equivalents of the words "privity or knowledge" as used in the limitation of liability act,[3] that is, mean as those do, negligence for which the owner is personally blameworthy, the judgment below was wrong. But appellee contended below and contends here that those words as used in the policy, have a wholly different meaning; that they have no application to cases of simple negligence or fault, though the negligence was the personal negligence of the assured, that is, though the owner was personally to blame for the condition causing the loss; that they have application only to willful, deliberate and intentional acts, or negligence so gross as in law to amount to willful, deliberate and intentional acts. They prevailed below upon this theory and there obtained a finding that the negligence of the assured as found in the limitation of liability proceedings and upon which it was denied the right to limit its liability, was not deliberate or intended nor was it gross in character; and that plaintiff had become liable to pay and did pay for loss of life on the Coney without fault or privity on its part within the meaning of the two policies of insurance on which it sued.

3 46 U.S.C.A. § 183.

There was a further finding; that plaintiff having paid, on account of judgments for loss of life on the Coney, more than the $40,000 limited under the policy, it should recover that sum; and that having conducted the litigation and incurred costs necessary therefor with the written consent of defendant as provided in the policy, plaintiff was entitled to recover in addition, $32,311.98, paid by plaintiff as costs of prosecuting and defending suits. Appellant on these undisputed, indeed, conceded facts, insists that the judgment was wrong, appellee that it was right.

It is the settled rule that fault in legal literature is the equivalent of negligence [4] and that privity in the same literature means partaking of, having part or interest in or cognizance of any action, matter or thing,[5] while under statutes English[6] and American,[7] providing exemptions from, or limitations of, liability in connection with carriage by sea, privity means some fault or negligence of which the owner of a vessel is personally cognizant or in which he personally participates.[8]

Appellee's burden, therefore, to show that as used in the policy they mean not simply the negligence of the owner as distinguished from that of its servants and agents but willfulness or negligence on his part so gross as to amount to willfulness, is a heavy one, if indeed it is not too heavy to be borne.

Appellee realizes that this is so. It seeks to meet its burden by (1) offering oral testimony as to the understanding among underwriters of the meaning and effect of the words as used in the policy, (2) reliance on three Federal cases, George A. Moore & Co. v. Eagle Star Ins. Co., D.C., 5 F.2d 358, affirmed 9 Cir., 9 F.2d 296; Hanover Fire Ins. Co. v. Merchants' Transportation Co., 9 Cir., 15 F.2d 946; Sorenson v. Boston Ins. Co., 4 Cir., 20 F.2d 640 (3) and the claim that English decisions give support to the meaning it contends for. Its reliance on oral testimony will not do, for in the case of the use in insurance policies, or other contracts, of words like these, having a plain and settled meaning in both popular and legal usage, oral testimony is inadmissible to contradict or vary that meaning.[9] But if the proffered evidence be considered admissible, it would not help appellee, for it does not show a uniform business or trade usage of the words different from their ordinary meaning. On the contrary it is agreed that the words are of English origin, and the testimony of appellant's witnesses, all English insurance men, is that they are taken from the English statutes, and have in the English clubs, the mean-

---

[4] Baldwin's Bouvier, page 403; Words and Phrases, Permanent Edition, Vol. 16, page 283.

Fault in legal literature is the equivalent of negligence, Garland v. Hewes, 101 Me. 549, 64 A. 914; Louisville, E. & St. L. R. R. Co. v. Berry, 2 Ind.App. 427, 28 N.E. 714; the expression without fault, as used in the Georgia Code, referring to actions for injuries by an employee, means the same as without negligence and the words fault and negligence in this connection are synonymous. Savannah, F. & W. R. R. Co. v. Austin, 104 Ga. 614, 30 S.E. 770.

[5] Baldwin's Bouvier, page 984.

[6] Statute of George II, 1734, Eng. Adm. Stat. 167, Statute 26, George III, 1786; Statute 53, George III, 1813; Statutes 18 and 19, Victoria; 502 Merchant Shipping Act, 1894, 57 and 58 Victoria, Chapter 60; Marine Insurance Act, 1906, Edward VII, Chapter 41; Carver on Carriage of Goods by Sea, 8th Edition, Sections 24, 25 and 26, pages 34 to 40.

[7] Section 4283, Revised Statutes, as amended Title 46 U.S.C.A. § 183.

[8] Asiatic Petroleum Co. Ltd. v. Leonards Carrying Co. Ltd. Aspinall's Reports of Maritime Cases, Vol. 12, N.S.; Thomas v. Tyne & Weer Steamship Assn. Asp. Vol. 14, N.S.; Lord v. Goodall Steamship Co., 15 Fed.Cas., page 884, No. 8,506.

Words and Phrases, Permanent Edition, Vol. 33, page 819 and pages 824, 825; The Republic, 2 Cir., 61 F. 109; Craig v. Continental Ins. Co., 141 U.S. 638, 12 S.Ct. 97, 35 L.Ed. 886; The Princess Sophia, 9 Cir., 61 F.2d 339; Eggers v. Southern S. S. Co., 5 Cir., 112 F.2d 347; Cf. Carver, Carriage by Sea, page 39.

[9] Blackett v. The Royal Exchange Assurance Company, 2 C. & J. 244; 149 English Reports, Full Reprint, at page 108; Barnard v. Kellogg, 10 Wall. 383, 19 L.Ed. 987; United States Tex Oil Corp. v. Kynerd, 5 Cir., 296 F. 836; United States Shipping Board v. Galveston Dry Dock Co., 5 Cir., 13 F.2d 607; Grace v. American Century Ins. Co., 109 U.S. 278, 285, 3 S.Ct. 207, 27 L.Ed. 932.

ing ascribed to the statutory words by the English decisions, while none of appellee's witnesses, all Americans, in any manner dispute this. They do say that in settling losses, the clubs they have represented have considered the question of intent and have settled the losses though there was negligence on the part of owners where there was no willfulness or bad faith. But they do not say that the words have a settled meaning or a settled usage, they say that each group they represent or know about, has a different form of statement of the limitation, and that they are all put in for the purpose of giving the clubs an opportunity to settle or reject the loss on the basis of the insured's good or bad faith. All of their testimony was directed to provisions in the rules of insurance clubs, none of it to a clause in a policy, and all of it recognized that the words in their natural and ordinary meaning embraced negligence. Their position was that though the words did embrace negligence, the clubs had made it a practice not to apply them to negligence where there was no bad faith or fraud. Such evidence not only does not show a universal trade custom or usage sufficient to overcome the plain meaning of words in the policy, it negatives the existence of such trade usage or custom.

■ Appellee's reliance on the Federal cases it cites will not do, for those were suits on protection and indemnity policies providing general coverage and containing no clause such as that found in these policies limiting the insurer's liability to losses occurring without the fault or privity of the assured. Cf. The Morro Castle (New York & Cuba Mail S. S. Co. v. Continental Ins. Co.), D.C., 32 F.Supp. 251. Their holdings that, even under such open policies, no recovery could be had where the loss was the result of willful, deliberate or intentional acts or of negligence so gross as to amount to this, the result in short of dolus malus or wrongdoing, but emphasize, as do the holdings of the English courts,[10] the correctness of appellant's position, that the insertion in

the policy of the words "without privity or fault of the assured" was with purpose and effect, and that a policy containing these limiting terms should not be construed as are policies not containing them. For such a construction giving no effect whatever to the limitation, would in effect write it out of the policy. But this is not all, for while we have been referred to no cases except the Morro Castle, supra, construing these words when used in a policy, there are, as we have seen in the notes supra, cases in abundance construing them when used in statutes, both English and American. That construction is uniform to the effect that when used in statutes limiting the owner's liability, in the English statute, "actual fault or privity", in the American statute, "privity or knowledge", they relieve the owner of personal liability, where he has not been personally negligent or privy to the negligence of his servants or agents, where in short the negligence or fault which causes the injury is attributable to him, not personally, but only under the doctrine of respondeat superior. As used in the statutes, they are not concerned with willful, deliberate and intentional action or with negligence so gross as to amount to that, they are concerned with liability for simple fault and in effect provide that owners shall not be liable for injuries caused by simple negligence, if they are not personally at fault or privy to the fault. We think it plain that they have the same meaning and effect when used in the policy in suit. That the words do not mean what appellee contends, is obvious we think, because unless expressly insured against, and it is doubtful if one could insure against the consequences caused by his own deliberate, intentional or fraudulent acts, an insurer would not be liable for losses from such acts, and it is not reasonable to suppose that the clause was used to protect an insurer from a liability which in law could not arise.

In Asiatic Petroleum Ltd. v. Leonards, supra, there is an excellent discussion from the standpoint of English law of the mean-

---

[10] Trinder, Anderson & Co. v. Thames & Mercy Reliance Ins. Co. Asp. Vol. 8, N.S. In that case all the judges agreed that while a policy upon a ship covering the perils of the sea covers loss brought about by the negligent navigation of the captain and crew, if such loss is immediately caused by perils of the sea, it does not cover one brought about by the willful act of the assured. "The loss being by a sea peril, the right of the assured is absolute unless he has been guilty of such willful default as that, his suit would be in effect one to take advantage of his own wrong, using the word dolus or wrong, in its true sense which does not embrace mere negligence."

ing of the words "fault or privity." Williams, L. J. who was for sustaining the appeal, stated: "I agree that the words fault and privity cover faults of omission as well as commission," while Buckley, L. J. and Hamilton, L. J. set out very clearly what the true meaning of those terms is. That was a case under Section 502, Merchants Shipping Act, 1894. The claim was that the vessel was lost by fire occurring without the fault or privity of the shipowner, Buckley saying: "If the loss of the goods by fire happens without the owner's fault or privity he is free from liability even if his ship is unseaworthy", goes on to say, "The words 'actual fault or privity', in my judgment, infer something personal to the owner—something blameworthy in him as distinguished from constructive fault or privity, such as the fault or privity of his servants or agents. But the words 'actual fault' are not confined to affirmative or positive acts by way of fault. If the owner be guilty of an act of omission to do something which he ought to have done he is no less guilty of an 'actual fault' than if the act had been one of commission. To avail himself of the statutory defense he must show that he himself is not blameworthy for having either done or omitted to do something or been privy to something. It is not necessary to show knowledge. If he has means of knowledge which he ought to have used and does not avail himself of them, his omission so to do may be a fault, and if so it is an actual fault, and he cannot claim the protection of the section."

Hamilton in his turn says of the matter: "Can it be said that the cargo was burnt without the actual fault or privity of the owners? Though I think the whole onus lies on the shipowner of proving, as a defense, loss by a fire of which he can predicate that it happened without his actual fault, and that 'without his actual fault or privity' in section 502 of the Merchant Shipping Act 1894, differs in this respect from negligence in connection with excepted perils in a bill of lading—see The Glendarroch (7 Asp.Mar. Law Cas. 420; 70 L.T.Rep. 344; (1894) P. 226)—I need not decide it, for the facts proved are quite sufficient for the purpose, let the onus lie as it may. Where the Legislature selected one adjective for employment, I think little is to be gained, and often much to be lost, by paraphrasing it with another. Actual fault negatives that liability, which arises solely under the rule of respondeat superior. In that sense it conveys the idea of personal fault, but it does not necessarily mean that the owner must have laid the train or lit the torch himself. Nor, again, does it mean that the owner must have been the sole or next or chief cause of the fire. It is fire 'without his actual fault' not fire 'except when caused by his actual action.'

"The question is, Could it be said of the fire that the owners had nothing to do with it, but only their servants, or that for this fire not they, but only their servants, if any persons, were to blame? It is not enough that the happening of the fire is the servants' fault, it must also not be the owner's fault. The cases show this."

Carver in Carriage by Sea, after referring to the English Cases as to what constitutes actual fault or privity, states: "There are several valuable cases in the U. S. Federal courts upon the corresponding words without the privity or knowledge of the owner, in U. S. Revised Statutes, Section 4283.[11] The fact is that the right to limitation is only lost when there has been personal fault giving rise to the loss."

In The Republic, 2 Cir., 61 F. 109, 112, the matter is we think, most succinctly and well stated. There in a case very like this one, the court in deciding against limitation of liability said: "The question we are to decide is whether a shipowner is entitled under the statute to limit his liability when the loss arises from a defective condition of his ship, of which he was ignorant because of his own negligent examination of the vessel. The statute was principally taken from the English statutes of 26 & 53 Geo. III. These statutes, instead of the words 'privity or knowledge', use the words 'privity and knowledge,' or 'fault or privity,' to express the exception. In the later English statutes (the merchants' shipping acts of 1854 and 1862) the phraseology was varied so that the exemption was limited to losses occurring without the 'actual fault or privity' of the shipowner. There is no reason to suppose that the diverse phraseology of these acts was employed for the purpose of expressing different rules of exemption, as there were no decisions of the English

---

[11] 46 U.S.C.A. § 183.

courts which indicated that the terms were not synonymous. The English courts have always construed the acts as intending to exempt the shipowner when he himself has not been in any way to blame, and to deny him the limitation of his liability only when personal blame is attributable to him. The Warkworth, 9 Prob.Div. 20, 145; The Spirit of the Ocean, 34 Law J. ·Adam. 74. Undoubtedly, by our statute, as by the English statutes, the common-law liability of the shipowner is not restricted in cases where his personal neglect has been an inducing cause of the loss. It was the intention of congress to relieve shipowners from the consequences of all imputable culpability by reason of the acts of their agents or servants, or of third persons, but not to curtail their responsibility for their own willful or negligent acts. [Authorities.] A loss is not occasioned without the knowledge or privity of the shipowner, when it arises from his personal neglect to inform himself of the defective condition of his vessel, the vessel being under his immediate personal supervision.

"Where the shipowner is a corporation, the privity or knowledge which precludes the statutory right must be that of the managing officers. Craig v. [Continental] Insurance Co., supra. In the present case the privity or knowledge of the corporation consisted in the negligence of its president, who, by his omission of proper care in his examination of the vessel, failed to discover her defective condition."

When the insuring provisions of the policy [12] are examined, with their provision insuring only losses the insured becomes liable to pay without fault or privity on its part, and their repeated references, to insurance against improper navigation and the negligence or default of the servants or agents of the Assured, it is quite plain we think that the words used in the policy have substantially the same meaning as those used in the English and American limitation of liability statutes, that the losses on account of the sinking of the tug Coney were not within the insurance, and that the judgment must be reversed and here rendered for the appellant.

---

[12] By this Policy of Insurance does insure Sabine Towing Company, Inc. hereinafter called the assured * * * against their losses resulting from liability as shipowners as hereinafter described and subject to the terms and conditions hereinafter set forth. * * * This company hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or assigns, all such loss and/or expenses as the Assured shall, without fault or privity on the part of·the Assured, become liable to pay and shall pay, not exceeding the amount of this policy on account of the liabilities, risks, events, happenings and/or occurrences herein set forth.

(a) For life salvage, loss of life or personal injury to any person being carried in, or who may be in the act of getting on board, or who may be in or near the vessel named herein.

(b) For loss of life or personal injury arising in relation to the handling of the cargo of the named vessel from the time of receipt for shipment on quay or wharf until final delivery ex quay or wharf at the port of discharge.

(c) * * *

(d) For loss of life or personal injury which by reason of the improper navigation of any such steamship as aforesaid, or of any other negligent act, may be caused to any other person.

(e) For loss or damage by collision which, by reason of the improper navigation of any such steamship as aforesaid, may be caused to any other ship or boat, or to any goods, merchandise or other things whatsoever * * *

(f) For loss or damage which by reason of the improper navigation of any such steamship as aforesaid or of a tug actually towing any such steamship may be caused to any goods or merchandise, or to any piers, jetties, or other movable and fixed things whatsoever, whether on board such steamship or not, and for all loss or damage which by reason of the improper navigation of any such steamship as aforesaid or by the neglect of those in charge of her may be caused to any other ship or boat or cargo or persons therein, or to the owners of any such ship or boat, without collision or contact.

(g) * * *

(h) * * *

(i) For other claims arising in respect of the shipment, carriage, discharge, or delivery of goods, or merchandise arising through other causes than "improper navigation" the intention being to mutually protect and indemnify the Assured against the negligence or default of their servants or agents. * * *

(j) * * *

(k) * * *

(l) * * *

In view of this conclusion, it is unnecessary for us to determine and we do not determine the correctness of the alternative attack upon the judgment in respect of its rendition for a sum in excess of $40,000.

Reversed and rendered.

McCORD, Circuit Judge (dissenting).

I do not concur in the majority opinion.

The words "fault or privity" as used in the policy of insurance should not be limited to the interpretation placed upon similar language used in the American and English limitation of liability statutes.

I do not agree that the words "fault or privity" have a "plain and settled meaning in both popular and legal usage." There seem to be no decisions construing the same or similar language in policies of marine insurance and I think the oral testimony of qualified witnesses, such as was offered in this case, was admissible to show that the words "fault or privity" have a recognized and well-understood meaning among underwriters and their customers, and that this characteristic meaning is different from the ordinary dictionary definition. Policies of insurance, like other contracts, are to be construed to give effect to the intention of the parties and "In examining, for the first time, any question under a policy of insurance, it is necessary to ascertain whether the contract has received a practical construction, by merchants and underwriters." General Mutual Ins. Co. v. Sherwood, 14 How. 351, 352, 362, 14 L.Ed. 452; Western Petroleum Co. v. Tidal Gasoline Co., 7 Cir., 284 F. 82; Daniel v. Pappas, 8 Cir., 16 F. 2d 880; The Svartford, D.C., 38 F.2d 874; New Roads Oilmill & Mfg. Co. v. Kline, 5 Cir., 154 F. 296; Duer on Marine Insurance, Vol. 1, p. 187.

W. Harvel LaBoyteaux, president of Johnson & Higgins, insurance brokers of New York, with a background of over fifty years in the insurance business, testified that he was familiar with "fault or privity" clauses in P. & I. policies, and that "P. and I. insurers have generally interpreted the clause in the policy or club rules as applying only if the owner has knowingly and willfully tolerated or permitted conditions so dangerous as to practically amount to moral turpitude."

Ellis Knowles, vice-president and head of the insurance department of C. D. Mallory & Co., Inc., and who had been in the insurance business for thirty-one years, testified that the words "without fault or privity" have a generally accepted meaning in the insurance business and that, "If an owner is deliberately crooked * * *—guilty of moral turpitude—then a P. and I. underwriter should not reimburse the owner, but if an owner is innocent of any intent or wrongdoing, the P. and I. underwriter should not hide behind any technicality in either the law or his policy."

Arthur J. Sullivan, who had been an average adjuster since 1917, testified that he was familiar with P. & I. policies containing "fault or privity" clauses; that the words "without fault or privity" have a generally accepted, "peculiar or characteristic meaning" in the insurance business; and that, "The meaning is that when a loss has been sustained through the deliberate and willful act of the assured, the underwriters shall be relieved of liability. * * * I think the words must be given a particular meaning, because if they are taken in their ordinary dictionary sense that will entirely destroy the effect of the policy, because the functions of a P. and I. policy is to protect the owner from losses that may arise through somebody's negligence in connection with the operation of steamships. That is the essential purpose of the policy. There is also a fault in the P. and I. claim, and if we exclude every claim in which there may be a fault we, in effect, completely destroy the purpose of the policy, and some sense must be given to these words of the policy, and they cannot be construed in a way that will entirely destroy the policy. Q. And the construction you have given us is what you consider their meaning, generally, in the insurance business to be? A. Yes."

Testimony of other witnesses for the appellee is to the same effect. This evidence shows that in the insurance business it is generally understood that for the underwriter to escape liability because of the "fault or privity" provision the negligence of the owner must measure to willful, deliberate, or intentional wrong.

The majority opinion points to cases which hold that fraud or willful, deliberate, or intentional negligence relieves the underwriter of liability under policies which do not contain the "fault or privity" clause. It is argued that a policy "containing these limiting terms should not be construed as are policies not containing them. For such a construction giving no effect whatever to the limitation, would in effect

702

write it out of the policy." It must be remembered that when a claim is made under an "all risk" policy which does not contain the "fault or privity" provision the underwriter who seeks to escape liability by showing fraud or "willful, deliberate, and intentional wrong" on the part of the assured must prove the wrongful conduct, and in the event of suit the burden of proof which the insurer must carry is a heavy one. When the underwriter inserted the words "without fault or privity" in the policy now before us it did so not to relieve itself from liability because of negligence on the part of the shipowner, but apparently in an attempt to place the burden upon the insured to show that the loss had been occasioned "without fault or privity"; that is, without willful, deliberate, or intentional wrongdoing on his part. "Fault or privity" as inserted in P. & I. policies, such as the one before us, should be construed to mean that henceforth the burden of proof as to cause of loss is upon the insured and not the underwriter. That is its purpose and nothing more. Cf. The Morro Castle Cases (New York & Cuba Mail S. S. Co. v. Continental Ins. Co.), D.C.N.Y., 32 F.Supp. 251; Id., 2 Cir., 117 F.2d 404, decided Jan. 27, 1941.

No contention is made in this case that the appellee was guilty of wanton or willful misconduct. So far as the record discloses the insured was honest and forthright in and about its business. At most it was guilty of simple negligence and bad judgment. For this dereliction this court has heretofore decreed that it must pay out large sums for the loss of seamen who were on the tug. Now it is told by the majority opinion that since it was guilty of simple negligence and bad judgment it may not recover the amount of insurance carried on the vessel.

The essential purpose of the policy is to protect the owner from loss that may arise through negligence in connection with the operation of its business. The construction placed upon the contested clause by the majority opinion is too narrow and virtually destroys the effectiveness of the policy of insurance. It not only places the burden of proof on the insured but also precludes recovery where even simple negligence on the part of the shipowner is shown.

I think the holding of the District Court was the correct one.

I respectfully dissent.