## LION OIL CO. v. GULF OIL CORPORATION.

### No. 12646.

United States Court of Appeals
Fifth Circuit.

May 2, 1950.

B. L. Allen, El Dorado, Ark., H. D. Dickens, El Dorado, Ark., for appellant.

Wilford W. Naman, Waco, Tex., Archie D. Gray, Houston, Tex., Elston R. Law, Houston, Tex., for appellee.

Before HOLMES, McCORD, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This civil action was filed by appellant, Lion Oil Company, against appellee, Gulf Oil Corporation, to recover the sum of $9,720.60, an amount alleged to be equal to 1/2 of the expenses incurred by appellant in operating certain oil and gas leases in Victoria County, Texas, during the period March 1, 1947, to March 1, 1948. The complaint alleges that the appellee was obligated to pay 1/2 of such operating expenses by virtue of an assignment executed by Gulf Production Company, appellee's predecessor in interest, to E. L. Smith Oil Company, Inc., appellant's predecessor in interest, and pursuant to the terms of a written contract by and between the same parties which was executed concurrently therewith on November 9, 1935. A copy of the assignment and contract are attached to and made a part of the complaint. The parties will be referred to herein as they were designated in the trial court, the Lion Oil Company as plaintiff, and the Gulf Oil Corporation as defendant.

In its responsive pleading the defendant asserted the defense of failure to state a claim upon which relief can be granted and, upon application of the parties, this defense was heard and determined before trial. The trial court sustained the defense and entered judgment dismissing the cause and the case is here on appeal from that judgment.

Inasmuch as appellant's cause of action is based upon an interpretation of the contract

and assignment, we think a clear picture of the situation may be obtained by setting forth the material provisions of the contract in the beginning before proceeding with a further statement of the allegations of the complaint.

The contract recites that Gulf Production Company, hereinafter called Gulf, has by instrument of even date transferred and assigned to E. L. Smith Oil Company, Inc., hereinafter called Smith, certain mineral leases covering lands in Victoria County, Texas; that the consideration for the assignment of the properties is the assumption by the assignee of all of the lease obligations; and that the contract is executed for the purpose of evidencing the agreement made. Paragraph one of the agreement provides that Smith shall comply with all of the obligations imposed by the leases, shall keep them in full force and effect and hold Gulf harmless from any injury or damage arising out of noncompliance with any of the lease obligations. Paragraph two recites that Smith shall have exclusive charge, control and supervision of all operations conducted on the land and that Gulf reserves to itself only the right to advise and consult with Smith about matters of general policy arising in connection with the operation of said land. Paragraph three provides that Smith shall conduct such operations as are necessary to reasonably develop the premises and that Smith shall drill all necessary wells to comply with the terms of the leases, including all necessary offsets.

The provisions of paragraphs four, five and six are as follows:

"IV

"Subject to the provisions of this agreement, Smith shall conduct the operations herein provided for, for the discovery and production of oil, gas or other minerals, at its sole and separate expense, it being specifically understood and agreed by and between the parties hereto that in no event shall Gulf in any instance be called upon to furnish any money necessary for the conducting of operations upon, or the production of oil, gas or other minerals from, the lands covered by the aforesaid assignment, and in no event shall Gulf be individually liable for any expense incurred by Smith in conducting operations and producing oil, gas or other minerals from the premises described in said assignment.

"V

"Until Smith has been repaid in full for its cost of operations and the production of oil, gas or other minerals from the premises covered by the above assignment, the oil, gas and other minerals produced and saved from said premises shall be owned as follows:

"Gulf shall receive 1/4 of 7/8 of the oil, gas or other minerals, free of all cost of operations and production, or at its option Gulf may elect to receive, free of cost, the value of 1/4 of 7/8 of all oil, gas or other minerals produced and saved from said premises, and Smith shall own and receive 3/4 of 7/8 of said oil, gas or other minerals.

"VI

"When Smith has been repaid in full for its expenses in conducting the operations herein provided for, out of 3/4 of 7/8 of the oil, gas or other minerals produced and saved from said premises, then Gulf shall receive 1/2 of 7/8 of all oil, gas or other minerals produced and saved from said premises, or at its option it may elect to receive 1/2 of 7/8 of the value of said oil, gas or other minerals produced and saved from said premises, and Smith shall receive the other 1/2 of 7/8 of such oil, gas or other minerals produced under the terms of said leases and this agreement. In the event Smith conducts further drilling operations, after it has been paid in full for past operations, then the ownership of the oil, or the proceeds thereof, shall be governed by paragraph V until Smith shall have been repaid for such drilling operations. Thereafter, the ownership of the oil shall be governed by the provisions of paragraph VI. Smith shall in no event anticipate expenditures."

Paragraph seven deals with the operation of particular leases that are not here involved and like closing paragraph nine has

no bearing on the present controversy. Paragraph eight specifically enumerates, but not by way of limitation, the various contemplated costs of operations and a method of accounting for them. No distinction is made between the handling of drilling costs and operating expenses, nor is there any language which suggests how any item of expense shall be borne. It recites that within one month after the close of each calendar month Smith shall furnish Gulf a statement showing all of the expenses incurred and the credits and receipts during such calendar month but this paragraph does not specify a limitation as to the time during which the accounting procedure shall be in effect.

Resuming a statement of the allegations of the complaint we find the following: That pursuant to the provisions of the contract Smith and plaintiff expended between November 9, 1935, and March 1, 1947, the sum of $456,376.68 in the development and operation of the leases assigned to it by Gulf; that during the same period Smith and plaintiff together received from the proceeds of 3/4 of 7/8ths interest in the oil and gas produced from the properties involved, the sum of $457,967.44; that for the period beginning March 1, 1947, and ending March 1, 1948, plaintiff expended, as the reasonable cost of operating the oil and gas leases involved, the sum of $19,441.20; and that the plaintiff has demanded of defendant that it pay to plaintiff 1/2 of the operating expenses incurred in operating these leases during such calendar months from March 1, 1947, to March 1, 1948, but the defendant has consistently refused to accede to such demands.

■ The Trial Court in sustaining the motion to dismiss, held that the contract when read in its entirety clearly shows the intention of the original contracting parties to be that when Smith had been repaid in full for all expenses in developing and operating the leases out of 3/4 of 7/8 of the oil and gas produced and saved from the premises, thereafter Gulf was to be entitled to receive 1/2 of 7/8 of all oil and gas produced and saved without any deduction from that stated fraction for current operating costs. In an effort to avoid the impact of this holding, the plaintiff now claims that the contract is patently ambiguous and that because of this ambiguity the court should construe the contract most strongly against the defendant and hold the contract to mean that during the period in the life of the leases involved, other than the pay out period, Gulf was obligated to pay 1/2 of the operating expenses from the proceeds of its 1/2 of the production. The defendant, on the other hand claims, and rightly so, that the contract is not ambiguous and that the only applicable rule of interpretation is that of determining the intent of the parties as manifested by its terms.[1]

■■ In determining whether the trial court erred in interpreting the contract as it did, our duty is restricted to the interpretation of the contract as the parties made it for themselves. It is a fundamental rule in the interpretation of agreements that the intention of the parties must be deduced, not from specific provisions of the instrument, but from its entire context. This is a rule of good sense and sound logic because the intention of the parties is not evidenced by any part or provision of the instrument but by every part and provision so construed as to be consonant with every other and with the entire agreement. Taking the contract by its four corners and examining it in the light of the circumstances surrounding the parties at the time it was executed, its intention is readily gathered by giving every provision of the instrument its ordinary meaning and effect.

Turning now to the crucial provisions of the contract we find that the consideration for the assignment of the leases is set forth in paragraph four, which reads: "Subject to the provisions of the agreement, Smith shall conduct the operations herein provided for, for the discovery and production of oil, gas or other minerals, at its sole and separate expense, * * *."

I. Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S.W. 1101, 1107.

The opening phrase, "subject to the provisions of this agreement", clearly means that the provisions of this paragraph are intended to govern, except as thereafter stated to the contrary in other provisions of the agreement. The remaining provisions of this paragraph clearly show that it was understood and agreed that Smith at its "sole and separate expense" should conduct the operations for the "discovery and production of oil, gas and other minerals", and that Gulf would not under any circumstances be called upon to furnish Smith any money for conducting operations, and in no event would Gulf be liable for any expenses incurred by Smith in conducting operations and producing oil, gas or other minerals. Coming now to the provisions of paragraph five we find the one and only exception to the operative effect of the provisions of the preceding paragraph. The language, "until Smith has been repaid in full for its cost of operations and production of oil, gas or other minerals" clearly indicates that a definite period of time was contemplated during which the provisions of this article would be in operation. And that during this period Gulf was to receive in kind or the value of 1/4 of 7/8 of all minerals produced and saved and Smith would be allowed to recoup its cost of operations and production out of 3/4 of 7/8ths. In this connection it is important to note that the present agreement contains no language which indicates that a distinction is to be drawn between the cost of drilling and the cost of other operations. And while the plaintiff would have us treat these two kinds of costs differently, it did not so interpret the contract in the past but retained 3/4 of 7/8ths of the oil until it had recovered all drilling and operating costs.

The complaint alleges that on March 1, 1947, plaintiff had recovered from the proceeds of 3/4 of 7/8 of the oil, all of its expenditures in the development and operation of these properties. Accordingly, paragraph five of the agreement ceased to be operative. It is conceded on both sides that the provisions of paragraph six governed during the period March 1, 1947, to March 1, 1948. This paragraph provides that "when Smith has been repaid in full for its expenses in conducting the operations herein provided for * * * Gulf shall receive 1/2 of 7/8 of all oil, gas or other minerals produced and saved from said premises, or at its option it may elect to receive 1/2 of 7/8 of the value of said oil, gas or other minerals produced and saved from said premises * * *." The interest that Gulf was entitled to receive could hardly be stated with greater clarity. The fraction 1/2 of 7/8 is definite and the most comprehensive word "all" means precisely what it says. The language 1/2 of 7/8 of all oil produced and saved clearly negates any inference or implication that the stated fraction was subjected to any deduction for operating costs.[2] This conclusion is borne out by the remaining language in this paragraph which, in stating plaintiff's interest, provides that "Smith shall receive the other 1/2 of 7/8 of such oil, gas or other minerals produced under the terms of said leases and this agreement". In contrast to the unqualified interest that Gulf is to receive, this language imposes a qualification upon plaintiff's interest and that qualification is set forth in paragraph four, which provides that Smith "shall conduct the operations herein provided for * * * at its sole and separate expense".

■ Considering the contract as a whole and giving to every provision of the instrument its ordinary meaning and effect we think it clearly appears that the original contracting parties intended that when Smith had been paid in full for all expenses theretofore incurred in developing and operating the leases, out of 3/4 of 7/8 of the oil and gas produced and saved from the premises, thereafter Gulf was entitled to receive 1/2 of 7/8 of all oil, gas or other minerals produced and saved from the premises without any deduction from that stated fraction for current operating costs. The trial court was right in enter-

2. Cf. U. S. Tex Oil Corporation v. Kynerd, 5 Cir., 296 F. 836.

ing a judgment of dismissal for failure to state a claim upon which relief can be granted. The judgment appealed from is Affirmed.